[No. F003247. Fifth Dist. Dec. 3, 1984.]

KENNETH FENTON et al., Plaintiffs and Appellants, v.
CITY OF DELANO et al., Defendants and Respondents.

## COUNSEL

Kit Parsons for Plaintiffs and Appellants.

John T. Hourigan, City Attorney, and Dale Parham for Defendants and Respondents.

## OPINION

**FRANSON, Acting P. J.—**

### STATEMENT OF THE CASE

Appellants filed below a complaint for declaratory and injunctive relief against respondents the City of Delano and various city officials. Appellants consist of a class of citizens of the City of Delano who signed a referendum in opposition to an ordinance imposed by respondents. The complaint asked that the ordinance be declared void and that respondents be restrained from enforcing it. That same day, appellants filed a petition for writ of mandate/prohibition asking that respondents be compelled to process the petition for referendum or that respondents be restrained from enforcing the ordinance in question.

Appellants' petition for writ of mandate/prohibition and their request for injunctive relief was denied by the trial court with the following memorandum of decision:

"The Court finds that the utilities charge in issue is a tax and not a fee. The Court finds that the ordinance in issue is not subject to the referendum process. The law was settled before Proposition 13 that the referendum could not be used in a manner which interfered with a local legislative body's responsibility for fiscal management; *DARE vs. LAKEPORT CITY COUNCIL,* 12 CA 3rd 864.

"The Court further finds that the tax imposed in this case is not a 'special tax' as defined by the California Supreme Court in *CITY and COUNTY OF SAN FRANCISCO vs. FARRELL,* 32 Cal 3rd 47, and therefore Proposition 13 and the statutes that followed do not prohibit the tax in this case. This ruling is despite the fact that this Court finds the dissenting opinions to be persuasive, *IF WE ASSUME,* that is, that this tax is the result of Proposition 13 limitations."

The trial court thereafter amended its statement of decision to acknowledge that the ordinance in question imposed a financial burden on the consumers of gas, electricity, telephone service and cable television.

The court pronounced judgment. A timely appeal followed.

### THE FACTS

On April 4, 1983, the Delano City Council passed ordinance No. 799 imposing a "fee" on the users of gas, electricity, the telephone and cable television. A 5 percent charge on each of these services was imposed for fiscal years 1983-1984 and 1984-1985 with a 3 percent charge to be imposed in fiscal year 1985-1986. By the terms of the ordinance, the consumer would not be subject to a charge of more than $25 per month per service.

Ordinance No. 799 was amended June 6, 1983, by ordinance No. 802 which provided for a 3 percent charge on the above-named services for fiscal year 1983-1984 and a 2 percent charge for fiscal years 1984-1985 and 1985-1986. According to ordinance No. 802, the consumer could not be charged more than $15 per month per service for fiscal year 1983-1984 and $10 per month per service for fiscal years 1984-1985 and 1985-1986.

A total of 2,153 signatures were collected and presented to City Clerk Dorothy Dowell on April 28, 1983, in opposition to the ordinance No. 799 and in support of a referendum. Ms. Dowell was advised by City Attorney John Hourigan that such taxes were exempt from the referendum process and that she should not process appellants' petition. On May 9, 1983, the city council was notified by both Dowell and Hourigan that no action would be taken on the petition.

At a court hearing July 29, 1983, City Finance Director Mike Corn testified that ordinance No. 802 could be expected to bring in $240,000 the first year and $160,000 per year for the two years following. He stated that the city would not have enough money to pay its bills without the ordinance and that over $100,000 was currently owed on a recently purchased fire truck. The city was also making plans, he stated, to build a new fire station.

Mr. Corn went on to testify that he learned of the possibility of enacting such a "tax" at a symposium he attended. He learned that such a tax was a means of replenishing funds lost through Proposition 13. The money from the tax, he stated, would be placed in the city's general fund for municipal functions such as police and fire protection.

At the time ordinance No. 799 was adopted, the city's projected deficit was $500,000 and at the time ordinance No. 802 was adopted the projected deficit was $300,000.

The city theoretically could have used revenue sharing funds in place of general fund assets to cover its general fund expenses; however, the city had no known revenue sharing funds available to it past September 1983. The use of money from the city's capital improvement fund would forestall capital projects and make repayment to the fund unlikely. Other special revenue funds, such as the gas tax fund, are designated for particular purposes and cannot be drawn upon for general fund projects.

## DISCUSSION

I. *The trial court properly found that the fee/tax in question is not subject to the referendum process.*

Appellants first argue that the city should be estopped from contending that their ordinance is a tax and not a fee since it did "not define the fee as a 'tax' in any way." This argument is made to bring the city within the purview of the Elections Code governing referenda petitions in municipal elections. Elections Code section 4055 states in pertinent part: "If the legislative body does not entirely repeal the ordinance against which the [referendum] petition is filed, the legislative body shall submit the ordinance to the voters . . . ."

Appellants cite no authority for the proposition that ordinances such as those in the present case impose "fees" rather than taxes. Nevertheless, " '. . . designating as a tax that which in its elements is an assessment can have no effect in determining whether it is one or the other. The question must be decided by the nature of the imposition, and not by the mere

name by which it is called.' There are many other instances where the word 'tax' has been used to designate a special assessment. [Citations.]" (*Los Angeles Co. F. C. Dist.* v. *Hamilton* (1917) 177 Cal. 119, 129 [169 P. 1028].) Black's Law Dictionary (5th ed. 1979) page 1307, columns 1-2, makes the following comments regarding the difference between "taxes" and "assessments": "In a broad sense, *taxes* undoubtedly include *assessments,* and the right to impose assessments has its foundation in the taxing power of the government; and yet, in practice and as generally understood, there is a broad distinction between the two terms. 'Taxes,' as the term is generally used, are public burdens imposed generally upon the inhabitants of the whole state, or upon some civil division thereof, for governmental purposes, without reference to peculiar benefits to particular individuals or property. 'Assessments' have reference to impositions for improvements which are specially beneficial to particular individuals or property, and which are imposed in proportion to the particular benefits supposed to be conferred. They are justified only because the improvements confer special benefits, and are just only when they are divided in proportion to such benefits. As distinguished from other kinds of taxation, 'assessments' are those special and local impositions upon property in the immediate vicinity of municipal improvements which are necessary to pay for the improvement, and are laid with reference to the special benefit which the property is supposed to have derived therefrom." One court has characterized a collection of fees for the maintenance of a sewer system as a tax, stating that such a tax: "must reasonably be considered a taxation function. 'Taxes' are defined as burdens imposed by legislative power on persons or property to raise money for public purposes. [Citations.] . . . And both *assessment,* i.e., 'the process of ascertaining and adjusting the shares respectively to be contributed by several persons toward a common beneficial object according to the benefit received' [citation], and *collection,* are included in 'the operation called levying the tax. The words are so used in the [C]onstitution.' [Citation.]" (*Dare* v. *Lakeport City Council* (1970) 12 Cal.App.3d 864, 868 [91 Cal.Rptr. 124].) ■■ We conclude that the trial court properly found "the utilities charge in issue is a tax and not a fee."

The next question is whether this tax was subject to referendum. ■■ ■■ The overwhelming weight of authority, beginning with the California Constitution itself, holds that citizens may not challenge properly imposed taxes by referendum. "Sec. 9. (a) The referendum is the power of the electors to approve or reject statutes or parts of statutes except urgency statutes, statutes calling elections, *and statutes providing for tax levies or appropriations for usual current expenses of the State.*" (Cal. Const., art. II, § 9, subd. (a), italics added.)

Several cases recognize that not only state taxes but local taxes are immune from the referendum: "California's Constitution, article IV, section

23 . . . provides that the *referendum* power does not lie to 'statutes providing for tax levies or appropriations for usual current expenses of the State.' . . .

"However, *Geiger* v. *Board of Supervisors,* 48 Cal.2d 832, 836 . . . and *Hunt* v. *Mayor & Council of Riverside,* 31 Cal.2d 619, 623-630 . . . have held respectively that county and municipal referendum powers cannot affect ordinances providing for 'tax levies.'" (*Dare* v. *Lakeport City Council, supra,* 12 Cal.App.3d 864, 867.) In *Geiger* v. *Board of Supervisors* (1957) 48 Cal.2d 832 [313 P.2d 545], the California Supreme Court held that a sales and use tax on retail sales was not subject to attack by referendum, emphasizing that any ambiguities in an Elections Code statute should be resolved in favor of a strict reading of the Constitution: ". . . the Constitution, standing alone, does not secure to county electors the right of referendum over tax levies or appropriations for the usual current expenses of county government. [Citation.]" (*Id.,* at p. 836.)

"The Elections Code does not expressly provide that tax ordinances shall be subject to referendum, and the language of these sections does not compel the conclusion that the Legislature sought to extend the referendum power to embrace sales and use tax ordinances contrary to [the Constitution] . . . ." (*Id.,* at p. 839.)

"The listing of exceptions in the Constitution amounts to a declaration of policy against subjecting legislation concerning the excepted matters to a vote of the people. While section 1 of article IV does not expressly prohibit the Legislature from extending the right of referendum to include a county sales tax ordinance, any holding that such measures are subject to referendum would be contrary to this policy and against the clear implication of the constitutional provision. Section 1 is expressly made self-executing, and, in addition, the Legislature is empowered to enact legislation to facilitate its operation. It is obvious, however, that the authorization to adopt procedural regulations does not include the power to enact substantive measures which would extend the scope of the basic referendum right. There is no provision authorizing substantive changes, and we have concluded that it was not intended that the Legislature should have the power to extend or expand the scope of referendum." (*Id.,* at pp. 836-837.) (In agreement, see *Hunt* v. *Mayor & Council of Riverside* (1948) 31 Cal.2d 619, 623 [191 P.2d 426].) Additionally, this court recently held in *City of Atascadero* v. *Daly* (1982) 135 Cal.App.3d 466 [185 Cal.Rptr. 228] that a local initiative ordinance which sought to make every tax or fee subject to voter approval "is an unlawful attempt to impair essential governmental functions through interference with the administration of the City's fiscal powers. [Citation.]" (*Id.,* at p. 470.)

Appellants seek to distinguish *Geiger* and *Hunt* from the present case on the ground that those two cases involved charter cities as opposed to general law cities such as Delano. Charter cities, they point out, are "empowered to exercise full control over [their] municipal affairs, unaffected by general laws on the same subject matters and subject only to limitations found in the Constitution and the city charter. [Citations.]" (*Rivera* v. *City of Fresno* (1971) 6 Cal.3d 132, 135 [98 Cal.Rptr. 281, 490 P.2d 793].) The case of *Myers* v. *City Council of Pismo Beach* (1966) 241 Cal.App.2d 237 [50 Cal.Rptr. 402], however, refutes this distinction: ". . . [T]he California Constitution, expressly provides that the referendum powers therein reserved to the people do not extend to 'tax levies or appropriations for the usual current expenses of the State. . . .' *The same exception applies to the political subdivisions of the state that are governed by general laws as distinguished from charters* [citation]. Thus the electors of Pismo Beach, which city derives its powers from the general laws, have no referendum power when it comes to repealing a tax ordinance." (*Id.*, at pp. 243-244, italics added.)

Appellants also make the policy argument that "if a tax can be repealed [by] the use of a statutory initiative, conversely, it should also be allowed to be repealed by the use of statutory referendum." They suggest that *Carlson* v. *Cory* (1983) 139 Cal.App.3d 724 [189 Cal.Rptr. 185] supports this position in that it eliminates the scope of cases such as *Myers* v. *City Council of Pismo Beach, supra,* 241 Cal.App.2d 237 and *Dare* v. *Lakeport City Council, supra,* 12 Cal.App.3d 864 and interprets the Constitution as not prohibiting "the use of the statutory initiative to repeal tax laws." (*Carlson* v. *Cory, supra,* 139 Cal.App.3d at p. 731.) *Carlson* should not be read so broadly. It simply interpreted *Myers* and *Dare* as holding "that neither the initiative nor the referendum may be used in a manner which interferes with a local legislative body's responsibility for fiscal management. [Citation.]" (*Ibid.*) Thus, *Dare* makes no challenge to the Constitution's limitation on the use of the referendum power.

II. *The trial court properly found that the tax in question did not require two-thirds voter approval.*[1]

Appellants rely primarily on Government Code section 37100.5 in arguing that the ordinances in the present case required two-thirds voter approval. That section reads: "The legislative body of any city may levy any tax which may be levied by any charter city, subject to the voters' approval

---

[1]This heading includes a discussion of three of appellant's fragmented issues: whether a tax on utility users requires two-thirds voter approval; whether a fee imposed on utility users requires voter approval; and whether a "special tax" for fire and police protection requires two-thirds voter approval.

pursuant to Article XIII A of the Constitution of California.'' Article XIII A, section 4 of the California Constitution (previously Prop. 13), in turn, reads: "Sec. 4. Cities, counties and special districts, by a two-thirds vote of the qualified electors of such district, may impose special taxes on such district, except ad valorem taxes on real property or a transaction tax or sales tax on the sale of real property within such City, County or special district.'' Appellant's selective choice of statutes does not support the position they urge. Other authority makes clear that taxes such as the one in the present case do not require two-thirds voter approval or voter approval at all.

*City and County of San Francisco* v. *Farrell* (1982) 32 Cal.3d 47 [184 Cal.Rptr. 713, 648 P.2d 935] holds that a tax imposed for that city's general fund does not require two-thirds voter approval pursuant to California Constitution article XIII A, section 4. ■ In reaching this conclusion, the Supreme Court stated: ". . . the language of section 4 must be strictly construed and ambiguities therein resolved so as to limit the measures to which the two-thirds requirement applies." (*Id.*, at p. 52.)

"One meaning frequently attributed to [special taxes] by cases and statutes is a tax 'collected and earmarked for a special purpose, rather than being deposited in a general fund.' [Citations.]" (*Id.*, at p. 53.)

"In keeping with these principles, we construe the term 'special taxes' in section 4 to mean taxes which are levied for a specific purpose rather than, as in the present case, a levy placed in the general fund to be utilized for general governmental purposes. This is a common meaning of the term, as is evident from the authorities cited above. More important, such a construction will provide the voters with the 'effective' property tax relief we discussed in *Amador* to the extent the section clearly requires a two-thirds vote for the adoption of a 'special tax,' while ascribing some meaning to every word used in the section. [Citation.]" (*Id.*, at p. 57.)

Appellants argue that "[a] broad reading of the *Farrel* [*sic*] case . . . would totally destroy Proposition 13,'' suggesting that cities could always compensate for limited property taxes by enacting "general fund" taxes of the kind in *Farrell* and in the present case. This possibility appears to have been recognized and addressed in *Farrell*; that court nonetheless found that strict adherence to the terms of article XIII A should be the paramount goal. We do not question the Supreme Court's decision on this issue.

■ An alternate theory argued by appellants for requiring two-thirds voter approval on the ordinances in question is based on Government Code section 53978 which provides in relevant part: "(a) Any local agency which

provides fire protection or prevention services . . . or which provides police protection services, may, by ordinance, determine and propose for adoption a special tax for fire protection and prevention provided by the local agency, or a special tax for police protection services provided by the local agency, or both of such special taxes if both such services are provided by the local agency, other than ad valorem property taxes, pursuant to this section. The legislative body may establish zones or areas within the local agency and may restrict the levy of the special tax to those zones or areas. Such proposition shall be submitted to the voters of the affected area or zone, or of the district, and shall take effect upon approval of two-thirds of the voters voting upon such proposition. The local agency which fixes such a special tax shall not, however, impose such tax upon a federal or state governmental agency or another local agency.

" . . . . . . . . . . . . . . . . . . . . . .

"(e) The revenues from each of such special taxes shall be used for the service for which it was imposed, and for no other purpose." Appellants argue that respondents have chosen to circumvent the voting requirement of this statute by lumping police and fire protection services into the city's general fund. While this is an arguable theory, relevant and controlling authorities and the language of the statute itself do not support appellants' contention that two-thirds voter approval was required for the tax in the present case.

The language of Government Code section 53978 speaks of "special taxes" and provides for the establishment of particular zones or areas within which the tax can be imposed. In addition, the funds received are to be limited for special uses. Such language contemplates a tax above and beyond the money needed for the general operating expenses of the police and fire departments. This interpretation is in keeping with Government Code section 50076 which provides: "As used in this article [dealing with voter approved special taxes], 'special tax' shall not include any fee which does not exceed the reasonable cost of providing the service or regulatory activity for which the fee is charged and *which is not levied for general revenue purposes.*" (Italics added.) (See also the language from *City and County of San Francisco* v. *Farrell, supra,* 32 Cal.3d 47 quoted above dealing with "special taxes.") Further, it is not this court's prerogative to second-guess respondent city's motives for the inclusion of police and fire protection within its general fund services. While such inclusion may avoid the requirement of voter approval for a "special tax," the trade-off is that the police and fire departments must share the available funds with each other and with other city agencies drawing upon that fund.

III. *The trial court properly refused to require that ordinance No. 799 and/ or ordinance No. 802 state findings that the funds of the fee/tax are necessary to meet the city's general fund expenses.*

Appellants cite no authority and make no argument for this proposition other than to say that the citizens of Delano "have the right to know" the reason for the tax imposed. A point totally unsupported by argument and authority "may be rejected by the reviewing court without discussion." (*Diamond Springs Lime Co.* v. *American River Constructors* (1971) 16 Cal.App.3d 581, 608 [94 Cal.Rptr. 200].) Accordingly, we will disregard the issue.

IV. ■ *The trial court properly refused to find that utilities, as necessities of life, are exempt from all forms of taxation.*

Again, appellants present little authority to support their contention that a tax on necessities of life such as utilities is impermissible. They rely on Revenue and Taxation Code section 6353 which reads: "There are exempted from the taxes imposed by this part the gross receipts from the sales, furnishing, or service of and the storage, use, or other consumption in this state of gas, electricity, and water when delivered to consumers through mains, lines, or pipes . . . ."

What appellants overlook in their citation of Revenue and Taxation Code section 6353 is the fact that it is part of a statutory chapter dealing with sales and use taxes, not general revenue taxes. The court in *Rivera* v. *City of Fresno, supra,* 6 Cal.3d 132 made the following observations regarding sales and use taxes and general revenue taxes as it wrestled with the issue of whether state law preempted the imposition of a local sales and use tax on utilities: "It has been suggested on behalf of plaintiffs that the Fresno utility users' tax invades the field of regulation of public utilities which has been clearly preempted by the state under applicable provisions of the California Constitution. [Citation.] However, whether or not the state has occupied the field of regulation, cities may levy fees or taxes solely for revenue purposes, as was done by the Fresno utility users' tax. [Citation.]" (*Id.,* at p. 139.) Since appellants do not argue that the tax in the present case was a sales and use tax, *Rivera* is no impediment to the imposition of a tax on utilities for general revenue purposes.

The case of *Pacific Gas & Electric Co.* v. *Sacramento M. Utility Dist.* (9th Cir. 1937) 92 F.2d 365, is distinguishable from the present case. In that case, the state itself was the provider of the utility services, and the tax imposed was by a particular district for the financing of those services to that district.

The judgment is affirmed.

Hamlin, J., and Hardin, J.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 21, 1985. Bird, C. J., was of the opinion that the petition should be granted.

*Assigned by the Chairperson of the Judicial Council.