[No. A065966. First Dist., Div. Two. Oct. 25, 1995.]

JOEL NEECKE, Plaintiff and Appellant, v.
CITY OF MILL VALLEY et al., Defendants and Appellants.

**COUNSEL**

Brekhus, Williams, Wester & Hall, Peter B. Brekhus and Linda J. Phillipps for Plaintiff and Appellant.

Jonathan M. Coupal and Trevor A. Grimm as Amici Curiae on behalf of Plaintiff and Appellant.

Thomas G. Hendricks, County Counsel, Allen A. Haim, Chief Deputy County Counsel, Meyers, Nave, Riback, Silver & Wilson, Andrea J. Saltzman, McDonough, Holland & Allen and Craig Labadie for Defendants and Appellants.

Howard, Rice, Nemerovski, Canady, Falk & Rabkin and Steven L. Mayer as Amici Curiae on behalf of Defendants and Appellants.

## OPINION

### HAERLE, J.—

## I. INTRODUCTION

This appeal arises from a tax refund action brought by Joel Neecke (Neecke) against the City of Mill Valley (City) and other defendants.[1] Neecke, on behalf of himself and others similarly situated, challenged the City's "municipal services tax," which was levied on real property owners beginning in fiscal year 1985-1986 and continuing, on the ground that it violated state constitutional provisions adopted by the voters as part of Proposition 13.

The trial court held that the tax (1) in its forms prior to its 1989 amendments, violated section 1 of article XIII of the state Constitution (hereafter simply section 1), which prohibits flat taxes on real property, and (2) in both its past form and its form at the time of trial, violated section 4 of article XIII A of the state Constitution (hereafter simply section 4), which prohibits the adoption of a "special tax" without two-thirds approval by the local electorate.

By stipulation, the issue of class certification was deferred until after the trial on the merits. When the motion was brought, the trial court denied it.

Notwithstanding the denial of the motion for class certification, the trial court found that the issues litigated were of "substantial public importance" and granted Neecke's motion for attorney fees pursuant to Code of Civil Procedure section 1021.5. The court, however, excluded from the award those fees expended in Neecke's unsuccessful effort to certify the class.

Neecke appeals from the trial court's denial of his motion for class certification and the trial court's reduction of his requested attorney fees. The City cross-appeals from the trial court's determination that the challenged tax is a "special tax" for purposes of section 4. The City does not appeal from the trial court's ruling that the tax as embodied in former Ordinance Nos. 1037 and 1062 was a property tax in violation of section 1.

---

[1] The County of Marin was named as a defendant. The county answered the complaint but, by agreement among the parties, did not appear at trial. The county filed a brief in the appeal adopting the "Response Brief" filed by the City.

We affirm in part and reverse in part. Specifically, we conclude that (1) the tax in its current form is not a "special tax," and (2) the trial court did not abuse its discretion by declining to certify the class. Further, in light of the changed circumstances our decision on the merits produces, we direct the trial court to reconsider Neecke's claim for attorney fees on remand.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Tax*

In 1978, the voters passed Proposition 13, thus enacting constitutional provisions constraining the ability of local governments to raise taxes. Like many other municipalities, the City by the mid-1980's determined that it had insufficient revenue to meet the demand for municipal services and that the levy of a new tax was required.

On July 1, 1985, the city council enacted Ordinance No. 1037, which levied a "municipal services tax" on the privilege of occupying real property in the City at certain maximum flat rates per parcel (generally $145 per year) for five categories of real property. The ordinance provided that the tax would be collected by the County of Marin (County) Tax Collector in conjunction with real property taxes. The ordinance also explicitly stated: "All proceeds of the tax levied and imposed hereunder shall be paid into the general fund of the City of Mill Valley and may be used for any and all municipal purposes." The tax was subsequently approved by a bare majority of the voters.

On February 17, 1987, after passage of Proposition 62, which required majority voter approval of general taxes imposed by cities, the city council enacted Ordinance No. 1062. This ordinance reenacted the municipal services tax embodied in Ordinance 1037 without substantial change, but called for an election to approve the tax. The tax was subsequently approved by a bare majority of the voters.

In 1988, Division Five of this court filed a decision setting forth criteria to determine whether a flat rate parcel tax is a valid excise tax or a non-ad-valorem property tax in violation of section 1. (*City of Oakland* v. *Digre* (1988) 205 Cal.App.3d 99 [252 Cal.Rptr. 99].) In response to that decision, on May 1, 1989, the city council enacted Ordinance No. 1086 "to clarify and declare its original intent [in enacting the municipal services tax], state the basis on which [the tax] was previously enacted, and remove any ambiguity in its provisions." The new ordinance made several changes to Ordinance No. 1062. However, no change (except capitalization) was made in section

5.36.070, which continued to provide that all proceeds of the tax "shall be paid into the General Fund" and "may be used for any and all municipal purposes."

B. *Neecke's Claims*

In March of 1990, Neecke, the owner of an unimproved lot in the City, filed two claims for a refund of his payments of the City's municipal services tax with the County Board of Supervisors and the city council. Both claims were made "pursuant to Revenue and Taxation Code [s]ection 5097," and asserted that a refund was due (1) for fiscal years 1985-1986 through 1989-1990 on the ground that the tax violated section 4 in that it is a special tax that was not approved by two-thirds of the voters and (2) for fiscal years 1985-1986 through 1988-1989 on the ground that the tax violated section 1 in that it was a non-ad-valorem property tax. One claim was made on behalf of Neecke and a class of all others who had paid the tax and one was not a class claim. Neither the City nor the County took any action on Neecke's claims.

C. *The Superior Court Action*

On September 10, 1991, Neecke, on behalf of himself and all others similarly situated, filed his first amended complaint for refund of property taxes and for declaratory relief against the City, the County, the County Tax Assessor and the County Tax Collector.

At Neecke's request, the parties stipulated to bifurcate the legal issues from the class certification and to try the legal issues first. The court so ordered.

Trial on the legal issues began on February 26, 1993. Over the continuing objection of the City, Neecke was permitted to examine the City manager and the City finance director and to introduce evidence to establish the reasons for the enactment of the tax. This evidence demonstrated that street repair had been a critical municipal need since the early 1980's. In 1983 and 1984, the City attempted to pass a special tax for street repairs, but was unable to muster two-thirds voter approval. Soon after the second election, the city council was advised on various options to fund street repairs, including the possibility of the adoption of a general municipal services tax. The city council was told that the proceeds of any general municipal services

tax must be deposited into the general fund and must not be earmarked for any special purpose lest section 4 apply. A few months later, the city council adopted Ordinance No. 1037, the first version of the municipal services tax. The evidence further indicated that, after the tax was enacted, the City embarked on a substantial street repair program. Some City staff believed that all proceeds of the tax were intended for street repair. Nevertheless, all proceeds of the tax had been deposited in the general fund, where they were available for use for general municipal purposes through the city's budget process.

The trial court found that, pursuant to *Rider* v. *County of San Diego* (1991) 1 Cal.4th 1 [2 Cal.Rptr.2d 490, 820 P.2d 1000] (hereafter *Rider*), the tax in all its forms was a "special tax" in violation of section 4 and that, pursuant to *City of Oakland* v. *Digre, supra,* 205 Cal.App.3d 99, the tax in its Ordinance Nos. 1037 and 1062 forms was a property tax in violation of section 1. With respect to its section 4 holding, the trial court specifically found that the City deliberately circumvented that section by "(1) failing to win voter approval of any of the ordinances by a two-thirds vote of the electorate; (2) categorizing the tax as a general tax; (3) depositing it in the general fund; and (4) using all or almost all of the tax money for a specific purpose: to fund Mill Valley's street improvement program."

Neecke then moved for class certification. The trial court denied the motion. The court reasoned that, pursuant to *Woosley* v. *State of California* (1992) 3 Cal.4th 758 [13 Cal.Rptr.2d 30, 838 P.2d 758] (hereafter *Woosley*), no class action can be maintained unless a class claim is authorized by statute and that Revenue and Taxation Code section 5097 does not authorize such a class claim.

Neecke moved for an award of attorney fees, pursuant to Code of Civil Procedure section 1021.5. The trial court awarded fees, costs and expenses of $64,758.27, but denied $13,579 worth of fees, the amount which had been incurred in the unsuccessful attempt to certify the class.

On March 22, 1994, judgment was entered, providing that Neecke receive a refund of all of the municipal services taxes that he paid from four years before he filed his claim through the time of judgment and that he receive attorney fees and costs in the amount of $64,758.27.

As set forth in the introduction, Neecke appealed and the City cross-appealed.

## III. Discussion

### A. The Tax Is Not a "Special Tax"

█ Whether or not the City constitutionally levied the tax, pursuant to Ordinance No. 1086,[2] depends upon whether the tax is a "special tax" that required the approval of two-thirds of the electorate pursuant to section 4.[3] The trial court concluded that the tax is a special tax. We conclude that the undisputed evidence establishes that it is not.

#### 1. What Is the Applicable Standard of Review?

█ The parties disagree on the standard of review to be applied to the question of whether the tax at issue is a special tax for purposes of section 4. Neecke contends that the substantial evidence standard applies, while the City contends that independent review is appropriate. We agree with the City's view.

We first observe that, although what type of evidence should have been admitted at trial was in dispute, the basic facts surrounding the imposition and collection of the tax were not. The application of a tax statute to essentially undisputed facts confronts the court with a pure question of law. (*Monterey Peninsula Taxpayers Assn.* v. *County of Monterey* (1992) 8 Cal.App.4th 1520, 1533, fn. 9 [11 Cal.Rptr.2d 188] [where facts fully developed below, question whether a tax is a special tax for purposes of section 4 presents a question of law]; cf. *Carlsbad Mun. Water Dist.* v. *QLC Corp.* (1992) 2 Cal.App.4th 479, 485 [3 Cal.Rptr.2d 318] ["The determination of whether a particular fee is a development fee or a special tax is a question of law."]; *Bixel Associates* v. *City of Los Angeles* (1989) 216 Cal.App.3d 1208, 1216 [265 Cal.Rptr. 347] [same]; *Russ Bldg. Partnership* v. *City and County of San Francisco* (1987) 199 Cal.App.3d 1496, 1504 [246 Cal.Rptr. 21] [same]; *Anaconda Co.* v. *Franchise Tax Board* (1982) 130 Cal.App.3d 15, 23 [181 Cal.Rptr. 640] [whether company's business operations comprised a "unitary enterprise" for tax purposes is a question of law].) In such a case, the court is not bound by the findings of the trial court and independent review is appropriate. (E.g., *Bixel Associates* v. *City of Los Angeles, supra,* 216 Cal.App.3d at p. 1216; *Anaconda Co.* v. *Franchise Tax Board, supra,* 130 Cal.App.3d at p. 23.)

[2]By its limited appeal, the City has effectively conceded the constitutional deficiency of the tax in its prior forms. Thus, we limit our consideration to whether the tax as set forth in Ordinance No. 1086 violates section 4.

[3]Section 4 provides in pertinent part: "Cities, Counties and special districts, by a two-thirds vote of the qualified electors of such district, may impose special taxes on such district, except ad valorem taxes on real property or a transaction tax or sales tax on the sale of real property within such City, County or special district."

## 2. *Is the Tax a Special Tax?*

Not surprisingly, the parties also adopt diverging views as to what constitutes a special tax. The City, relying upon *City and County of San Francisco* v. *Farrell* (1982) 32 Cal.3d 47 [184 Cal.Rptr. 713, 648 P.2d 935] (hereafter *Farrell*) and its progeny, contend that any tax levied by a general purpose agency and placed in that agency's general fund for general municipal purposes cannot be a special tax. Neecke contends that *Rider, supra,* 1 Cal.4th 1 effectively overruled the *Farrell* line of cases and established a test whereby the purpose for levying the tax is determinative. If the tax was levied for a special purpose, it is a special tax.

If the *Farrell* rule survived *Rider,* it is dispositive of the issue before us. The parties do not dispute that the City is a general purpose entity. Moreover, Ordinance No. 1086 specifically provides: "All proceeds of the tax levied and imposed hereunder shall be paid into the General Fund of the City of Mill Valley and may be used for any and all municipal purposes." For reasons we shall explain, we conclude that the City is correct that *Farrell* applies and the tax in question is not a special tax.

In *Farrell,* the court concluded that a payroll and gross receipts tax, the proceeds of which were placed in the city's general fund to be used for general governmental expenditures, was not a special tax. (*Farrell, supra,* 32 Cal.3d at p. 51.) In reaching this conclusion, the court observed that "[o]ne meaning frequently attributed to [special taxes] by cases and statutes is a tax 'collected and earmarked for a special purpose, rather than being deposited in a general fund.' [Citations.]" (*Id.* at p. 53.) The court later summarized its holding by construing the term "special taxes" to mean "taxes which are levied for a specific purpose rather than . . . a levy placed in the general fund to be utilized for general governmental purposes." (*Id.* at p. 57.) The fact that the proceeds of the tax in question were deposited into the City's general fund was determinative in that case.

Several district courts then followed the reasoning of *Farrell* by holding that taxes, the proceeds of which were deposited in a city's general fund, were not special taxes. (*Cohn* v. *City of Oakland* (1990) 223 Cal.App.3d 261 [272 Cal.Rptr. 714] [real estate transfer tax]; *City of Oakland* v. *Digre, supra,* 205 Cal.App.3d at p. 104 ["Since Measure M monies [parcel tax] go into Oakland's general fund, the tax is a general tax even though the primary purpose of the tax is to fund specified city services."]; *Fenton* v. *City of Delano* (1984) 162 Cal.App.3d 400, 409 [208 Cal.Rptr. 486] [utility fee].)

In 1991, the Supreme Court decided *Rider.* In that case, the court addressed the questions of what constitutes a "special tax" and what constitutes

a "special district," both for purposes of section 4. In *Rider*, the Supreme Court considered the constitutionality of a tax levied by an agency that had been created by special state legislation in order to construct and operate justice facilities in San Diego County and that had been authorized by that legislation to impose a countywide supplemental sales tax to finance its "general governmental purposes."

The court first considered whether the agency was a special district, a question not implicated in the present case. Under the test previously enunciated by the court in *Los Angeles County Transportation Com.* v. *Richmond* (1982) 31 Cal.3d 197 [182 Cal.Rptr. 324, 643 P.2d 941], the agency would not be a "special district" subject to the requirements of section 4. Agreeing with the trial court's finding that the agency was created by the Legislature at the behest of the County solely and purposefully to circumvent section 4, the majority concluded that to extend the holding of *Richmond*[4] to agencies created after the passage of Proposition 13 would create a wide and unwarranted loophole in Proposition 13 as the *Richmond* dissent had foretold. (*Rider, supra,* 1 Cal.4th at pp. 10-11.) Such a reading would in effect eviscerate the term "special district" for purposes of agencies created after 1978. The court thus declined to extend the *Richmond* test to such agencies. The court instead declared that a "special district" includes "any local taxing agency created to raise funds for city or county purposes to replace revenues lost by reason of the restrictions of Proposition 13." (*Id.* at p. 11.)

The court then turned to the question of whether the sales tax was a special tax. The court stated that "[w]e believe the *Farrell, supra,* 32 Cal.3d 47, rationale does not extend to limited purpose agencies such as the Agency herein." (*Rider, supra,* 1 Cal.4th at p. 14.) The court explained: "It is undisputed that if the County had directly adopted the tax in question, earmarking its revenues for the special, limited purpose of financing the County's justice facilities, it would have been deemed a 'special tax' under *Farrell.* As plaintiffs observe, it would be anomalous if the 'special' tax of one agency could so readily become the 'general' one of another. Under defendants' proposed test, the Legislature could readily avoid section 4's supermajority voter approval requirement by simply creating a local taxing agency to accomplish a specific, narrow governmental purpose (e.g., life-guard towers for county beaches), and provide that tax revenues shall be deposited in the agency's 'general fund' for the 'general governmental purposes' of that agency. [¶] *A more reasonable interpretation of section 4,*

---

[4]The *Richmond* court held that an agency lacking the power to impose a tax on real property could not be deemed a "special district" for purposes of section 4. (*Los Angeles County Transportation Com.* v. *Richmond, supra,* 31 Cal.3d at pp. 205-206.)

*consistent with Farrell's* (*supra*, 32 Cal.3d 47) *guidelines*, is that a 'special tax' is one levied to fund a specific governmental project or program, such as the construction and financing of the County's justice facilities." (*Id.* at p. 15, italics added.)

As Neecke points out, the *Rider* court did state that the label given the tax is "of minor importance in light of the realities underlying its adoption and its probable object and effect. [Citation.]" (*Rider, supra*, 1 Cal.4th at p. 15.) From this statement and the holding that an intent to circumvent Proposition 13 is critical in determining whether a special purpose agency created after 1978 will be considered a special district, Neecke concludes that *Rider* effectively overruled *Farrell* and its progeny and stands for the proposition that the intended use of the tax proceeds is determinative of the question of whether the tax is a special tax. We conclude that Neecke reads *Rider* too broadly.

The bulk of Neecke's arguments on the special tax issue depends upon our acceptance of the principle that *Farrell* could not have survived *Rider*. Scrutinizing the language of *Rider*, we fail to find support for Neecke's contention that that case effectively overruled *Farrell* and the cases that followed *Farrell*. The Supreme Court did not explicitly make such a statement, and the logic of the decision does not compel such a conclusion. Contrary to Neecke's position, a fair reading of *Rider* is that it simply carved out an exception to the "general funds rule" set forth in *Farrell*.[5]

The essence of a special tax, as explained *both* in *Farrell* and *Rider*, is that its proceeds are earmarked or dedicated in some manner to a specific project or projects. As the Supreme Court in *Rider* explicitly recognized, the "general funds" of a special purpose agency *must* be used for a special and limited purpose. Such is not the case with funds placed in a city's general fund, which are available for use for any of the city's legitimate functions and are allocated during the general budgeting process in light of changing priorities and conditions. Thus, there is no certainty that tax proceeds deposited in the general fund will be used for any specific project, although such a result indeed may have been the intention of the officials enacting the tax in question. (Cf. *City and County of San Francisco v. Cooper* (1975) 13 Cal.3d 898, 929 [120 Cal.Rptr. 707, 534 P.2d 403] [board may not pass

---

[5]Following oral argument in this case, our Supreme Court filed a decision in which the court cites *Farrell* in a manner that we believe supports our conclusion that the holding of the *Farrell* case remains viable. (*Santa Clara Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220 [45 Cal.Rptr.2d 207, 902 P.2d 225].) In this new decision, the high court invalidated a sales tax proposed by a local agency to fund certain transportation projects on the ground that the tax's failure to secure the approval of two-thirds of the electorate violated Government Code section 53722, a provision of Proposition 62.

ordinance divesting itself or future boards of power to enact legislation within its authority].) This distinction underlies the majority opinion in *Rider*.[6]

We also observe that, although all parties have cited numerous authorities, they do not cite and we have not found any case where a court has declared a tax levied by a general purpose entity the proceeds of which were deposited into its general fund to be a "special tax." Indeed, cases decided after *Rider* either have recognized that the special tax definition in that case is limited to taxes levied by special purpose agencies, have used the *Farrell* definition to evaluate a tax levied by a general purpose agency, or have had no occasion to consider whether *Rider* extends beyond the context of a tax levied by a limited purpose agency. (See *Brydon* v. *East Bay Mun. Utility Dist.* (1994) 24 Cal.App.4th 178, 190-191 [29 Cal.Rptr.2d 128] ["*Rider* refused to extend the rationale of *Farrell* to those agencies, created after 1978, whose only raison d'être was to accomplish funding for a special, designated and limited purpose. In those instances, the contrivance of depositing the tax in the general fund was viewed as an insufficient disguise for the real purpose of earmarking those funds for a particular purpose."]; *Fisher* v. *County of Alameda* (1993) 20 Cal.App.4th 120, 124, 128, 131 [24 Cal.Rptr.2d 384] [real estate transfer tax; citing *Farrell*]; *Fielder* v. *City of Los Angeles* (1993) 14 Cal.App.4th 137, 141-142 [17 Cal.Rptr.2d 630] [same]; *Monterey Peninsula Taxpayers Assn.* v. *County of Monterey, supra,* 8 Cal.App.4th 1520 [recognizing the general fund rule; citing both *Rider* and *Farrell*]; *Hoogasian Flowers, Inc.* v. *State Bd. of Equalization* (1994) 23 Cal.App.4th 1264 [28 Cal.Rptr.2d 686] [applying *Rider* to invalidate tax levied by a special district, i.e. a school board]; *Howard Jarvis Taxpayers' Assn.* v. *State Bd. of Equalization* (1993) 20 Cal.App.4th 1598 [25 Cal.Rptr.2d 330] [applying *Rider* to invalidate a local sales tax levied by a special district to fund detention and justice facilities].)

To take one case as an example, in *Monterey Peninsula Taxpayers Assn.* v. *County of Monterey, supra,* 8 Cal.App.4th 1520, the court concluded that a sales tax levied by an agency, which was created by a county and which was authorized to spend certain amounts on 27 specific improvement and repair projects, violated section 4. (8 Cal.App.4th at p. 1525.) In discussing

---

[6]We believe it is inappropriate and unnecessary for this court, as Neecke's claims appear to invite us to do, to weigh in on the disagreement between the majority and the dissenting opinions regarding whether the majority's holding is consistent with the reasoning underlying *Farrell.* (See *Rider, supra,* 1 Cal.4th at p. 30 (dis. opn. of Mosk, J.).) The majority based its decision upon a substantial difference between the facts of *Rider* and the facts of *Farrell.* Moreover, as discussed above, the language of the majority's opinion provides us no basis to question *Farrell's* status as controlling precedent. (See *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

whether the tax levied by the agency, which the court had found to be a special district, was a special tax, the court cited the definitions found in both *Rider* and *Farrell*. Moreover, in rejecting the county's and agency's argument that its multiple purposes removed it from the *Rider* definition, the court wrote: "In our view, such stacking is camouflage and does not suddenly convert a multi-*specific*-purpose tax into a 'general tax' for 'general governmental purposes.' A single tax with certain amounts earmarked for specific projects is categorically different from revenues that are deposited in the general fund and available for expenditure for any and all governmental purposes." (8 Cal.App.4th at p. 1535.)

Furthermore, since we conclude that *Rider* did not overrule *Farrell*, we see nothing in the former decision that requires, as Neecke contends, a court to ascertain whether a tax, the proceeds of which are deposited in a city's general fund, was enacted in order to circumvent Proposition 13 and then (if the court concludes that it was) to invalidate the tax. The *Farrell* court was aware of the potential that its decision provided for cities to compensate for Proposition 13's limitation on property taxes by enacting "general fund taxes." (*Farrell, supra*, 32 Cal.3d at pp. 56-57 (maj. opn.), 57-58 (dis. opn. of Richardson, J.); accord *Fenton* v. *City of Delano, supra*, 162 Cal.App.3d at p. 408.) As the *Fenton* court succinctly observed: "Appellants argue that '[a] broad reading of the *Farrel* [*sic*] case . . . would totally destroy Proposition 13,' suggesting that cities could always compensate for limited property taxes by enacting 'general fund' taxes of the kind in *Farrell* and in the present case. This possibility appears to have been recognized and addressed in *Farrell*; that court nonetheless found that strict adherence to the terms of article XIII A should be the paramount goal. We do not question the Supreme Court's decision on this issue." (*Fenton* v. *City of Delano, supra*, 162 Cal.App.3d at p. 408.) Adding to the *Fenton* court's observations, we see nothing in the subsequent writings of the Supreme Court, particularly the *Rider* case, to lead us to believe that that court has reconsidered its position.

■ Furthermore, we briefly observe that to construe the "special tax" portion of the *Rider* decision as broadly as Neecke would have us do would violate the well-established rule that, except in certain "rare circumstances" (*County of Los Angeles* v. *Superior Court* (1975) 13 Cal.3d 721, 729 [119 Cal.Rptr. 631, 532 P.2d 495]), ". . . the validity of legislative acts must be measured by the terms of the legislation itself, and not by the motives of, or influences upon, the legislators who enacted the measure." (*City and County of San Francisco* v. *Cooper, supra*, 13 Cal.3d at p. 913; accord, *Board of Supervisors* v. *Superior Court* (1995) 32 Cal.App.4th 1616 [38 Cal.Rptr.2d 876].) ■ Although the *Rider* court apparently concluded that the potential threat to the legislative intent behind Proposition 13 posed by the

establishment of "special districts" constituted a "rare circumstance" in which the general rule should be avoided, we are loath to extend such a "rare" exception to the "special tax" context when neither the language nor the logic of the Supreme Court's decision compels us to do so.

Because the language and logic of *Rider*, as well as the subsequent cases construing it, support the conclusion that the *Farrell* definition of a special tax was limited, rather than overruled, by *Rider* and therefore remains applicable to the present case, we reject the contrary arguments of Neecke and his supporting amici curiae. Since we have concluded that the "general fund" exception found in *Farrell* remains viable in cases, like this one, where a tax is levied by a general purpose agency and the proceeds are deposited into its general fund, there can be no doubt that the tax at issue here is not a special tax subject to the requirements of section 4. Indeed, Neecke as much as concedes that, if *Farrell* applies, our holding is a foregone conclusion.[7]

## B. *Class Certification Was Prohibited*

Neecke appeals from the portion of the trial court's order denying his motion to certify his action as a class action.[8] The trial court denied the motion on the ground that the Supreme Court's recent decision in *Woosley*, *supra*, 3 Cal.4th at pages 788-793 precluded class actions in tax refund cases unless specifically provided for by statute. Neecke contends that the trial court erred because (1) *Woosley* does not apply to local tax refund actions; (2) if *Woosley* does apply, (a) the class action was properly brought pursuant to Code of Civil Procedure section 382, or, alternatively, (b) equity dictates that *Woosley* should not have been applied retroactively to the case at hand, or (c) retroactive application of *Woosley* violates the due process clause. We conclude, however, that the trial court correctly applied *Woosley* to refuse to certify the class in this case.

### 1. *What Is the Applicable Standard of Review?*

We generally review a trial court's order on a motion for class certification for abuse of discretion. (E.g., *Caro* v. *Procter & Gamble Co.* (1993) 18 Cal.App.4th 644, 655 [22 Cal.Rptr.2d 419].) "Absent other error, we will 'not disturb a trial court ruling on class certification which is supported by substantial evidence unless (1) improper criteria were used

---

[7]We therefore see no reason to address in detail the City's arguments relating to the admissibility of certain evidence in the trial court. Pursuant to our holding, it is apparent that much of this evidence was simply irrelevant.

[8]Despite the fact that the City prevailed on its cross-appeal, we must address the class certification issue raised in Neecke's appeal, because the City did not appeal from the trial court's ruling that the tax in its former forms was unconstitutional.

[citation]; or (2) erroneous legal assumptions were made [citation].' " (*Id.*, at p. 655, quoting *Richmond* v. *Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23].)

### 2. *Does Woosley Bar Certification of the Class?*

By stipulation, certification of the class was not considered until after the liability issues were tried. Thus, the motion for certification was not heard until approximately two years after Neecke filed his complaint purporting to sue on his own behalf and on behalf of all those similarly situated.

As Neecke states in his opening brief before this court, he filed his suit in a representative capacity, pursuant to Revenue and Taxation Code sections 5097 and 5140, in reliance upon a line of cases that had interpreted those statutes to permit an individual to file on behalf of those similarly situated as well as on his own behalf. (See *Schoderbek* v. *Carlson* (1980) 113 Cal.App.3d 1029 [170 Cal.Rptr. 400] [property tax]; *Lattin* v. *Franchise Tax Board* (1977) 75 Cal.App.3d 377 [142 Cal.Rptr. 130] [income tax]; *Santa Barbara Optical Co.* v. *State Bd. of Equalization* (1975) 47 Cal.App.3d 244 [120 Cal.Rptr. 609] [sales tax]; cf. *Javor* v. *State Bd. of Equalization* (1977) 73 Cal.App.3d 939 [141 Cal.Rptr. 226] [sales tax].) These cases arrived at this result by applying the "substantial compliance doctrine" of *City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447 [115 Cal.Rptr. 797, 525 P.2d 701] to the tax refund context. In that case, the Supreme Court held that in order to satisfy the administrative claims provision of the Tort Claims Act (Gov. Code, § 810 et seq.) "the class claim must provide . . . specified information concerning the representative plaintiff and then sufficient information to identify and make ascertainable the class itself. . . . Beyond this, the sufficiency of the identifying information must be measured by the substantial compliance test." (*City of San Jose* v. *Superior Court, supra*, 12 Cal.3d at p. 457, italics omitted.) Applying this test, the court held that a class action lawsuit could be predicated on a claim made by an individual on behalf of all others similarly situated, notwithstanding the fact that the claim statute at issue made no mention of the availability of class claim procedures and contained several provisions designed to inform the governmental entity of the facts underlying each claim it was asked to consider. (*Ibid.*)

Between the time Neecke's complaint was filed and the time the class certification motion was heard, the Supreme Court decided *Woosley*. In that case, the Supreme Court specifically held that "the holding in *City of San Jose* v. *Superior Court, supra*, 12 Cal.3d 447, should not be extended to include claims for tax refunds." (*Woosley, supra*, 3 Cal.4th at p. 789.) In so holding, the Supreme Court expressly disapproved of the decisions in

*Schoderbek* v. *Carlson, supra,* 113 Cal.App.3d 1029; *Lattin* v. *Franchise Tax Board, supra,* 75 Cal.App.3d 377; *Santa Barbara Optical Co.* v. *State Bd. of Equalization, supra,* 47 Cal.App.3d 244; and *Javor* v. *State Bd. of Equalization, supra,* 73 Cal.App.3d 939, "to the extent they express views to the contrary." (*Woosley, supra,* 3 Cal.4th at p. 792.) Contrary to the disapproved decisions, the Supreme Court reasoned that, because the California Constitution vests the Legislature with plenary control over the manner in which tax refunds may be obtained (Cal. Const., art. XIII, § 32), a taxpayer must show strict, rather than substantial, compliance with the administrative procedures established by the Legislature. (*Woosley, supra,* 3 Cal.4th at pp. 790-793.)

The court then applied the strict compliance rule to the class certification motion in *Woosley.* In that case, the plaintiff had filed an administrative claim "on behalf of himself and all others similarly situated" for the refund of certain state motor vehicle license fees and use taxes on the ground that those taxes violated the commerce clause of the United States Constitution. (*Woosley, supra,* 3 Cal.4th at p. 767.) Assessing the validity of the purported class claim with regard to the challenged license fee, the court found that Vehicle Code section 42231 required that a claim be filed by " 'the person who has paid the erroneous or excessive fee or penalty, or his agent on his behalf.' " The court discerned nothing in this statute to indicate that the Legislature intended to sanction a class action; therefore, plaintiff's purported class claim was invalid. (*Woosley, supra,* 3 Cal.4th at p. 790, italics omitted.)

Similarly, with regard to the use tax claim, the court noted that at the time plaintiff initiated his claim, Revenue and Taxation Code section 6904 simply provided that " '[e]very claim shall be in writing and shall state the specific grounds upon which the claim is founded.' " (*Woosley, supra,* 3 Cal.4th at p. 791.) Almost 10 years later, during the pendency of the *Woosley* litigation, the statute was amended specifically to provide for the filing of a class claim for refunds on the condition that the claim be accompanied by written authorization from each putative class member, signed by each taxpayer and stating the basis for the claim. (*Ibid.*) The plaintiff in *Woosley* argued that prior to 1987 the claims statute had impliedly provided for the unconditional filing of class claims and that the subsequent amendments to the statute merely narrowed this preexisting right. (*Id.* at pp. 791-793.) The court, however, rejected this contention and again found the class claim to be invalid. (*Ibid.*)

If *Woosley* applies to the present case, it is fatal to Neecke's attempt to certify the class. Neecke brought the present action pursuant to Revenue and

Taxation Code sections 5097 and 5140. Section 5097 provides for the refund of improperly collected property taxes based on a claim that is: "(1) Verified by the person who paid the tax, his or her guardian, executor, or administrator. [¶] (2) Filed within four years after making of the payment sought to be refunded . . . ." (Rev. & Tax. Code, § 5097.) If a claim, filed pursuant to section 5097, is denied, a suit to recover the improperly collected taxes may be brought pursuant to section 5140, which provides that the suit may be brought by "[t]he person who paid the tax, his or her guardian or conservator, the executor of his or her will, or the administrator of his or her estate . . . ." That statute also provides that "[n]o other person may bring such an action; but if another should do so, judgment shall not be rendered for the plaintiff." (Rev. & Tax. Code, § 5140.) If anything, these statutory provisions are even more restrictive than the statutory provisions at issue in *Woosley*. Neither of these statutes provide for a class claim or suit such as the one Neecke attempted to certify.

Neecke therefore contends that *Woosley* does not apply to his case. He reasons that, since *Woosley* relied upon section 32 of article XIII of the state Constitution[9] and since that provision had previously been held to apply to the state, but not to local governments,[10] *Woosley* is inapplicable to refund actions against local municipalities.

Neecke's argument, however, is belied by the *Woosley* decision itself. Nothing in the language of *Woosley* indicates an intent to limit that case's holding to claims statutes addressed to state, as opposed to local, taxes; indeed, that part of the court's opinion dealing with the class claim issue twice uses the term "governmental entities." (*Woosley*, *supra*, 3 Cal.4th at pp. 788, 789.) Also, and as previously noted, the *Woosley* court expressly overruled *Schoderbek* v. *Carlson*, *supra*, 113 Cal.App.3d 1029, to the extent that it was inconsistent with *Woosley*. Relying upon *City of San Jose* v. *Superior Court*, *supra*, 12 Cal.3d 447, *Schoderbek* held, in the context of whether administrative remedies had been exhausted, that Revenue and Taxation Code sections 5097 and 5140 permit class claims and class actions for refunds of local property taxes. Thus, that case is not materially distinguishable from the case at hand. There was simply no reason for the

---

[9]That constitutional provision states: "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature." (Cal. Const., art. XIII, § 32.)

[10]See *Pacific Gas & Electric Co.* v. *State Bd. of Equalization* (1980) 27 Cal.3d 277, 282 [165 Cal.Rptr. 122, 611 P.2d 463]; *Shiseido Cosmetics (America) Ltd.* v. *Franchise Tax Bd.* (1991) 235 Cal.App.3d 478, 490 [286 Cal.Rptr. 690]; *A&M Records, Inc.* v. *State Bd. of Equalization* (1988) 204 Cal.App.3d 358 [250 Cal.Rptr. 915].

Supreme Court to disapprove of *Schoderbek* unless the court intended its *Woosley* holding to apply to local, as well as state, taxes. We therefore must conclude that *Woosley* governs the case at hand.

Foreseeing that we might so conclude, Neecke argues that the general statute authorizing class actions, Code of Civil Procedure section 382, constitutes a manner provided by statute for obtaining tax relief, as required in *Woosley*, and that his claim falls under that statute. We disagree. First, Neecke's argument ignores that filing an administrative claim under Revenue and Taxation Code section 5097 is a prerequisite to bringing an action for a refund under Revenue and Taxation Code section 5140, the section under which Neecke filed this action. As explained above, section 5097 does not provide for a class claim. Code of Civil Procedure section 382 cannot be used to eliminate the requirement of complying with the claim statute. (See *Farrar* v. *Franchise Tax Bd.* (1993) 15 Cal.App.4th 10, 17 [18 Cal.Rptr.2d 611].)

Neecke argues that, if the holding in *Woosley* is applicable to a claim for refund of a local tax, *Woosley* nevertheless should not be applied retroactively to the present case. We disagree. First, the Supreme Court itself concluded in *Woosley* that its holding should be applied retroactively to the case before it. (*Woosley*, *supra*, 3 Cal.4th at p. 794.) With one possible exception, Neecke's arguments on this subject were rejected in *Woosley* and need not be further addressed.

The one contention raised by Neecke which is not implicitly or explicitly addressed by *Woosley* is that to apply *Woosley* retroactively to his suit would contravene public policy by thwarting the goals of Proposition 13. Even Neecke recognizes, however, that competing public policies are implicated in this case: the tax relief goals of Proposition 13 and the preservation of the fiscal stability of public entities. Contrary to Neecke's contention, it is not at all clear that his preferred public policy goal trumps the other.

In support of his position, Neecke relies upon *Monterey Peninsula Taxpayers Assn.* v. *County of Monterey*, *supra*, 8 Cal.App.4th 1520. In that case, the Court of Appeal concluded that *Rider* should be applied retroactively to invalidate a tax levied by a "special district." In so concluding, the court observed: "Fiscal stability also does not clearly outweigh the purpose of Proposition 13 and the goal achieved by applying *Rider:* effective real property tax relief, the assurance of continued relief via a super majority voter approval requirement, and the immediate elimination of taxes that circumvented Proposition 13 and thwarted its purpose." (*Id.* at p. 1541.)

The *Monterey* decision, however, is clearly distinguishable and of little persuasive authority in determining whether *Woosley* should be applied

retroactively in the present case to bar class relief. More instructive are the two cases that denied class relief to the consumers who paid the tax invalidated in *Rider*. (*Rider* v. *County of San Diego* (1992) 11 Cal.App.4th 1410 [14 Cal.Rptr.2d 885] (*Rider II*); *Kuykendall* v. *State Bd. of Equalization* (1994) 22 Cal.App.4th 1194 [27 Cal.Rptr.2d 783].)

On remand from the Supreme Court's decision in *Rider*, the Court of Appeal in *Rider II* considered the validity of the trial court's order, entered prior to the Supreme Court's decision in *Woosley*, which redistributed the invalidated supplemental sales tax to consumers through the mechanism of a future reduction in the sales tax. The *Rider II* court concluded that this order was not authorized and that, pursuant to *Woosley*, refunds could only be obtained through the statutory procedures for obtaining sales tax refunds. While the court recognized that these procedures provided reimbursement to retailers, not to the true taxpayers, i.e., consumers, the court reasoned that, under the reasoning set forth in *Woosley*, neither it nor the trial court had "unfettered discretion" to fashion a remedy to provide relief to consumers. (*Rider II, supra*, 11 Cal.App.4th at p. 1421.) Although the court recognized that the case had been disapproved in part in *Woosley*, the court suggested that consumers might be able to bring an equitable class action for a refund like the one in *Javor* v. *State Board of Equalization* (1974) 12 Cal.3d 790 [117 Cal.Rptr. 305, 527 P.2d 1153]. (*Ibid.*)

*Kuykendall* v. *State Bd. of Equalization, supra*, 22 Cal.App.4th 1194, was the *Javor*-type action suggested in *Rider II*. During the pendency of the appeal, after the trial court had certified a class of consumers and entered a judgment for the class (which required the State Board of Equalization to make a direct refund to the class and to submit a reimbursement plan to the court for approval), the Legislature enacted a statutory scheme to provide for refunds of sales taxes held unconstitutional. In light of this development and in reliance upon *Woosley*, the Court of Appeal held that the subsequently enacted statutory refund scheme prevailed over the trial court's refund order and retroactively applied to defeat class relief.

Furthermore, unlike the *Monterey* and *Rider* cases, the majority of the proceeds of the tax at issue in this case have been spent and not impounded (primarily because the validity of the tax was not challenged until four years after it was first enacted). Moreover, the tax in its present form does not violate Proposition 13. As the City persuasively argues, these factors add weight to the policy to preserve the fiscal stability of the City.

Finally, Neecke argues that application of *Woosley* to prohibit class relief in the present case violates federal due process. In support of his argument,

Neecke relies upon *McKesson Corp.* v. *Florida Alcohol & Tobacco Div.* (1990) 496 U.S. 18 [110 L.Ed.2d 17, 110 S.Ct. 2238]. As even that case recognizes, however, all that due process requires is that the state provide its taxpayers with "a fair opportunity to challenge the accuracy and legal validity of their tax obligation" and a " 'clear and certain remedy.' " (*Id.* at p. 39 [110 L.Ed.2d at p. 37], quoting *Atchison, T. & S. F. R. Co.* v. *O'Conner* (1912) 223 U.S. 280, 285 [56 L.Ed. 436, 438, 32 S.Ct. 216].) The state may, consistent with constitutional demands, ensure its "exceedingly strong interest in financial stability" by enacting a variety of procedural protections in tax refund cases, including, but not limited to, limiting refunds "only to those taxpayers paying under protest or providing some other timely notice of complaint" or providing "relatively short statutes of limitations." Thus, contrary to Neecke's contention, it is clear that federal due process concerns do not require that the state provide class action mechanisms for obtaining tax refunds. (Cf. *Farrar* v. *Franchise Tax Bd., supra*, 15 Cal.App.4th at p. 21 [federal Constitution does not obviate requirement of strict compliance with statutes governing administrative class refund procedures; failure to comply properly invalidates class claim].)

For all these reasons, we conclude that the trial court neither made erroneous legal assumptions nor abused its discretion by denying Neecke's motion for class certification in reliance upon *Woosley.*

## C. *Reduction of Attorney Fees*

Pursuant to Code of Civil Procedure section 1021.5, the trial court awarded Neecke all of the attorney fees that he had incurred, with the exception of the fees incurred in his unsuccessful motion for class certification. Neecke appeals from this reduction in the fee award.

Code of Civil Procedure Section 1021.5 provides in pertinent part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

Obviously, in light of our conclusion that the current version of the tax is not a constitutionally infirm "special tax," the issue of whether Neecke should receive attorney fees has been significantly altered. The City argues in a footnote that, if we rule in its favor on the special tax issue, then Neecke

is not entitled to any attorney fees. Neecke is silent on the issue. We, therefore, exercise our discretion to instruct the trial court to consider on remand whether, in light of our decision, but also in light of the fact that he prevailed regarding the two earlier ordinances, Neecke should be awarded attorney fees pursuant to Code of Civil Procedure section 1021.5 and, if so, in what amount. (See *Laurel Heights Improvement Assn.* v. *Regents of University of California* (1988) 47 Cal.3d 376, 426-427 [253 Cal.Rptr. 426, 764 P.2d 278] [decision regarding whether trial court or Court of Appeal should decide the question of whether to award fees pursuant to section 1021.5 is "a matter within the discretion of the Court of Appeal"].)

## IV. DISPOSITION

The judgment is reversed in part and affirmed in part. The portions of the judgment awarding Neecke (1) a refund of taxes paid pursuant to Ordinance No. 1086 and interest thereon and (2) attorney fees pursuant to Code of Civil Procedure section 1021.5 are reversed. On remand, the trial court is ordered to reconsider whether Neecke should be awarded attorney fees in light of this decision and, if so, in what amount. In all other respects, the judgment is affirmed and costs on appeal are awarded to defendants and appellants.

Kline, P. J., and Phelan, J., concurred.

The petition of appellant Joel Neecke for review by the Supreme Court was denied January 4, 1996.