[No. A042876. First Dist., Div. Five. Oct. 14, 1988.]

CITY OF OAKLAND, Petitioner, v.
RICHARD DIGRE, as Director of Finance, etc., Respondent.

**COUNSEL**

Jerome B. Falk, Jr., Ann Brick, Peter J. Busch, Kirk E. Trost, Howard, Rice, Nemerovski, Canady, Robertson & Falk, Jayne W. Williams, City Attorney, and Joyce M. Hicks, Assistant City Attorney, for Petitioner.

Burk E. Delventhal, Deputy City Attorney (San Francisco), as Amicus Curiae on behalf of Petitioner.

Peter W. Davis, Robert E. Zang, Ezra Hendon, Paul D. Fogel and Crosby Heafey, Roach & May for Respondent.

Ronald A. Zumbrun, Anthony T. Caso, Jonathan M. Coupal and Jeffrey T. Even as Amici Curiae on behalf of Respondent.

OPINION

**LOW, P. J.**—In this case, we hold that Oakland's Neighborhood Services Retention Act of 1988, a flat-fee "parcel tax" designed to raise revenue for the support of municipal services, is a non-ad valorem general property tax prohibited by article XIII, section 1 of the California Constitution. In so doing, we only invalidate the tax ordinance before us. We do not hold that a flat-fee parcel tax must necessarily be considered a property tax.

The Neighborhood Services Retention Act was submitted for voter approval as "Measure M" in the June 7, 1988, primary election. The proposed tax was intended to raise $13 million against an anticipated $14.5 million deficit for fiscal year 1989, the result of reductions in federal funding and of the long-term impact of Proposition 13 (Cal. Const., art. XIII A). Measure M imposes a "parcel tax" consisting of an annual flat fee assessed against Oakland property holdings. According to Measure M's purpose clause, the parcel tax "is for the sole purpose of raising revenue which will be deposited in the City's General Fund" to provide "revenue . . . necessary to maintain and enhance municipal services in the City of Oakland." The ballot argument in support of the measure stressed Oakland's declining revenues for fundamental municipal services, particularly police and fire protection, but also parks, youth centers, libraries, street cleaning and repair, and the Oakland museum.

Measure M was approved by just over 50 percent of the Oakland electorate, and went into effect July 1, 1988. Respondent Richard Digre, Oakland's Director of Finance, declined to enforce Measure M on the ground that the tax violated the constitutional requirement that all property be taxed according to value. (Cal. Const., art. XIII, § 1.) Oakland now seeks a writ of mandate to compel respondent to enforce and collect the tax. Oak-

land requests this court to invoke its original jurisdiction (Cal. Const., art. VI, § 10) in light of the compelling need to resolve an issue of substantial public importance.  ■ ■ ■ ■  We determined that exercise of our original jurisdiction was proper and issued an order to show cause in lieu of an alternative writ.[1]

We conclude Measure M is unconstitutional, and a peremptory writ may not issue for its enforcement.

I

Measure M "impose[s] a tax on all Parcels in the City of Oakland," exempting only low-income homeowners and nonprofit residential hotels for low-income tenants. The tax defines " 'parcel' " as "a unit of real estate . . . as shown on the most current official assessment role of the Alameda County Assessor." Parcels are categorized as either residential, vacant, or as " '[c]ommercial [i]mprovements' " defined as all nonresidential "[b]uildings, structures, fixtures, fences and paving . . . erected or affixed to land, and all items which are permanently affixed to land which have become a part of real property by having been physically incorporated therein or permanently affixed thereto."

The amount of the Measure M tax depends on the type of parcel and its size; in the case of commercial parcels the tax is also dependent on location. A residential parcel containing four or less residential units is assessed an annual flat fee of $90. A residential parcel containing five or more residential units is assessed a fee of $40 per unit. Vacant parcels are assessed a fee computed from a formula based on square footage. Vacant parcels are assigned a class size based on increments of 5,000 square feet. The minimum tax for a 0-5,000-square foot vacant lot is $250 yearly, and the fee increased by $250 for each incremental increase in class size. Commercial parcels outside the Central District are taxed by same square footage, at the same $250-increment rate as vacant parcels. Commercial parcels inside the

---

[1] An appellate court may exercise its original jurisdiction to determine "issues . . . of great public importance [which] must be resolved promptly." (*County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841, 845 [59 Cal.Rptr. 609, 428 P.2d 593]; see *California Housing Finance Agency* v. *Elliott* (1976) 17 Cal.3d 575, 579-580 [131 Cal.Rptr. 361, 551 P.2d 1193]; *County of Fresno* v. *Malmstrom* (1979) 94 Cal.App.3d 974, 978 [156 Cal.Rptr. 777]; Cal. Civil Writ Practice (Cont.Ed.Bar 1987) § 3.21, pp. 95-96.) Oakland asserts Measure M is needed to supply funds in the current fiscal year for "neighborhood services threatened by the current budget crisis" of fiscal year 1989. Under these circumstances, "the delay attendant upon first submitting this matter to a lower court would result in confusion in the administration of the tax laws and hardship and expense to the general public." *County of Sacramento* v. *Hickman, supra,* at p. 845.) Respondent agrees with Oakland that immediate resolution of the issue by this court is appropriate.

Central District are taxed at a triple rate, with a minimum tax and corresponding incremental class size increase of $750.

The parcel tax is assessed to the owner of the property unless the owner is exempt from taxation; only then is the tax assessed to the occupant of the property, unless the occupant is also exempt. The tax "may be collected by the County of Alameda in conjunction with, at the same time, and in the same manner as, the County's collection of property tax revenues for the City of Oakland." If collected by the county, the tax "shall be subject to and governed by the rules, regulations, and procedures utilized by the County of Alameda in its collection of property taxes for the City of Oakland." Delinquent taxes, however, are "deemed a debt to the City" for which the taxpayer is personally liable.

Although Proposition 13 is not directly involved in this case, the parcel tax must be viewed in its context. Measure M recites that it "is not a special tax." By this recitation, Measure M has defined itself to avoid the strictures of Proposition 13. As a method of limiting new taxes, Proposition 13 permits imposition of a "special tax" by a local governing body, but only upon approval of a supermajority of two-thirds of the electorate. (Cal. Const., art. XIII A, § 4; see generally, *City and County of San Francisco* v. *Farrell* (1982) 32 Cal.3d 47 [184 Cal.Rptr. 713, 648 P.2d 935]; 1 Ehrman & Flavin, Taxing Cal. Property (3d ed. 1988) § 2.39.) ■ Such a "special tax" is " 'collected and earmarked for a special purpose, rather than being deposited in a general fund.' " (*City and County of San Francisco* v. *Farrell, supra,* at p. 53, quoting *County of Fresno* v. *Malmstrom, supra,* 94 Cal.App.3d at p. 983; see *Farrell, supra,* 32 Cal.3d at p. 57; *Fenton* v. *City of Delano* (1984) 162 Cal.App.3d 400, 408 [208 Cal.Rptr. 486].)

Since Measure M monies go into Oakland's general fund, the tax is a general tax even though the primary purpose of the tax is to fund specified city services. (See *Fenton* v. *City of Delano, supra,* 162 Cal.App.3d at p. 409.) The validity of this general non-ad valorem tax hinges upon whether it is an excise tax or a tax on property.

## II

■ Respondent contends the flat-fee parcel tax is a tax on property, and therefore violates article XIII, section 1's requirement that property be taxed on an ad valorem basis. Oakland argues that Measure M is not a property tax, but an excise tax on the privilege of utilizing municipal services. If Measure M is a tax on real property, it must then be determined whether a non-ad valorem general property tax is constitutional. If Measure M is an excise tax, the measure must be upheld. ■ An excise tax "is not

a property tax within the meaning of article XIII, section 1 of the California Constitution." (*City of Huntington Beach* v. *Superior Court* (1978) 78 Cal.App.3d 333, 340 [144 Cal.Rptr. 236].)

■ "The determination of whether a particular tax is a property tax or excise tax is not always an easy matter." (*Douglas Aircraft Co., Inc.* v. *Johnson* (1939) 13 Cal.2d 545, 550 [90 P.2d 572].) "The character of a tax must be determined by its incidents, and from the natural and legal effect of [its] language . . . ." (*Flynn* v. *San Francisco* (1941) 18 Cal.2d 210, 214 [115 P.2d 3]; see *Ingels* v. *Riley* (1936) 5 Cal.2d 154, 159 [53 P.2d 939, 103 A.L.R. 1].) "The nomenclature is of minor importance, for the court will look beyond the mere title or the bare legislative assertion that the provision is for a license [i.e., an excise tax] to see and determine the real object, purpose and result of the enactment." (*Flynn* v. *San Francisco, supra,* at pp. 214-215.) The Legislature's (or in this case, the electorate's) designation of a tax as a property tax or an excise tax is entitled to some weight, but is not conclusive. (*Douglas Aircraft Co., Inc.* v. *Johnson, supra,* at p. 550.)

Unfortunately, Measure M is only explicit about what it is not. It declares itself not to be a special tax under Proposition 13, not to be an ad valorem property tax, and not to be a transaction tax or sales tax on real property. Aside from these negatives, however, Measure M does not define itself except by the expressed purpose of financing municipal services. Measure M does not recite that it is an excise tax, or that its purpose is to tax the privilege of using city services. Neither does the measure discuss the relationship between the ownership of urban property and the use of municipal services. It is not clear from the text of the measure or the ballot arguments that the privilege of use of services is the object of the parcel tax.

Respondent points to the measure's central use of the term "parcel tax," and argues the very use of the term "parcel" indicates an attempt to tax property. As noted above, however, the nomenclature used by a tax does not conclusively determine its nature. Even if it were, the phrase "parcel tax" is sufficiently vague to encompass either a tax on the property itself or a tax on the use of services by the owners or occupants of the parcel.

Respondent also stresses the link between the amount of the tax and the size and type of property taxed, arguing that Measure M must be a property tax if the tax is so measured. The link between tax and lot use and size, however, is not determinative. ■ An excise tax "does not become a property tax simply because it is proportioned in amount to the value of the property used in connection with the privilege which is taxed." *Ingels* v.

*Riley, supra,* 5 Cal.2d at p. 160.) By the same token, Oakland's argument that property taxes are usually ad valorem, so that a non-ad valorem tax must necessarily be an excise tax, proves little. The mode of ascertainment of a tax is not conclusive (*ibid.*); a non-ad valorem tax could just as easily be an excise tax or an unconstitutional general tax on property.

■    The nomenclature and text of Measure M being inconclusive, we examine the incidents and practical effect of the parcel tax against the backdrop of the various distinctions drawn between excise and property taxes.    ■    Generally, a property tax taxes ownership per se without conditions. (*Flynn* v. *San Francisco, supra,* 18 Cal.2d at p. 215.) In contrast, an excise tax is "a tax on the exercise of one of the incidences of property ownership," such as the ability to transfer or devise property or the ability to use, store, or consume it. Stated another way, the excise tax is a tax on the privilege of exercising the taxed incident of ownership. (*City of Huntington Beach* v. *Superior Court, supra,* 78 Cal.App.3d at p. 340.)

Since the property tax taxes ownership in all its incidents, the tax is levied without regard to the use to which the property is put. (*Douglas Aircraft Co., Inc.* v. *Johnson, supra,* 13 Cal.2d at p. 551.) Accordingly, a property tax is generally due and payable annually at a set time. (*City of Huntington Beach* v. *Superior Court, supra,* 78 Cal.App.3d at p. 340.) An excise tax, on the other hand, is generally due and payable only when the taxed privilege is exercised, and is therefore "proportioned according to the extent of the privilege enjoyed." (*Ingels* v. *Riley, supra,* 5 Cal.2d at p. 161.)

A property tax generally triggers no personal liability, but is secured by the property taxed; an excise tax results in a personal debt. (*City of Huntington Beach* v. *Superior Court, supra,* 78 Cal.App.3d at pp. 340-341.)

■    Measure M is a tax on property ownership in all its incidents. The tax is imposed on all property whether or not the property is used or lies vacant, and regardless of whether the property is used as a residence or a commercial development. In *Flynn,* the Supreme Court ruled a vehicle tax a tax on property because it "depend[ed] entirely on the factor of ownership," without regard to use or operation of the vehicles. (*Flynn* v. *San Francisco, supra,* 18 Cal.2d at p. 214.) Oakland's contention that property within its borders "exist[s] only to be used" overlooks the fact that use is only one incident of property ownership, and property may be owned without being used. (See *Douglas Aircraft Co., Inc.* v. *Johnson, supra,* 13 Cal.2d at pp. 550-551.)

Moreover, consistent with the taxation of property ownership, the parcel tax falls due annually at fixed times. It is difficult to consider the cases discussed above and not conclude that Measure M is a property tax.[2]

Oakland argues, however, that the tax is actually an excise tax on one incident or privilege of ownership, the use and enjoyment of municipal services for the benefit of the property. Oakland maintains, in essence, that the use and enjoyment of municipal services is a necessary incident of urban property ownership which may be taxed without taxing ownership per se. This argument is based on the premise that all urban property, either directly or indirectly, "uses," and therefore benefits by, basic city services. We are told by Oakland that although all parcels do not use all municipal services, "all parcels require municipal services to a greater or lesser degree" and "every parcel is taxed because every parcel, whether it be occupied or vacant, commercial or residential, requires municipal services." All property presumably requires police and fire protection and therefore benefits from such services. One could assume that all members of the Oakland community derive a benefit from the simple fact they live in a community in which a variety of recreational and cultural services are available, regardless of whether all Oakland citizens use them to the fullest. Furthermore, as Oakland asserts, "[p]roperty values [may be] enhanced to the degree that the level of municipal services provided makes Oakland a desirable place to be."

We do not disapprove of the concept of a parcel tax to fund the maintenance of city services directly or indirectly used by all property owners. Measure M, however, cannot be upheld on this basis. First, the text of the tax measure and its accompanying ballot arguments do not establish, or even mention, the supposed fact that the tax was levied on city services. This means the voters of Oakland did not in fact enact such an excise tax, and the *post hoc* argument presented by Oakland cannot transmute a property tax into an excise tax. Second, Oakland's communal benefit theory of service-use taxation must be developed from the abstract theory into a workable concrete proposal. For instance, the indirect benefit derived from active police patrols and prompt fire protection services may be easily acknowledged, but it is less clear how a vacant lot benefits from maintenance of a youth center or a museum. Moreover, a tax based on use of municipal

---

[2] The distinction based on personal liability is not helpful to our analysis. Oakland stresses that section 14 of Measure M makes unpaid parcel taxes a personal debt of the property owner. As respondent observes, however, section 13 of Measure M provides that owners falling delinquent "shall be subject to and governed by the rules, regulations, and procedures utilized by the County of Alameda in its collection of property taxes for the City of Oakland . . . ." Under this provision, a property owner would arguably be subject to tax liens and foreclosures for nonpayment of the parcel tax, though the lien date, enforcement method, and redemption right, if any, are not defined. With respect to liability for unpaid taxes, Measure M seems to bear the hallmark of both an excise and a property tax.

services would be better directed to the property's occupant, who actually uses the services, and not the owner who may not even reside in the city. (Cf. *City of Glendale* v. *Trondsen* (1957) 48 Cal.2d 93 [308 P.2d 1] [excise tax assessed to property occupant for the regular collection of rubbish].) The most telling flaw of the Oakland tax, however, and the most telling need for further development, is the question of the proportionality of the tax to use of city services.

Oakland maintains that, like the vehicle use fee in *Ingels* and the use tax on imported personal property in *Douglas Aircraft,* the parcel tax is imposed in proportion to the extent the privilege of use of city services is enjoyed; Oakland argues that "proportionality is accomplished by the imposition of a fee relating to the size, use and location of parcels." The use fee in *Ingels,* however, was directly proportioned to the extent of vehicle use. The tax in *Douglas Aircraft* was similarly proportioned. Measure M, however, simply fails to apportion the tax by the type and extent of municipal services used.

The measure does attempt to apportion the tax to use by distinguishing between residential and nonresidential parcels. With regard to the former, the $90 fee for a four-unit parcel becomes $200 when the parcel increases to five residential units, and thereafter increases at the rate of $40 per unit. With regard to vacant and commercial property, the fee is computed based on square footage and location (inside or outside of the Central District). Oakland thus concludes that "the apportionment of the tax bears a direct relationship to the use and consumption of City services by that parcel."

As respondent notes it is not easy to clearly see exact proportionality between the tax and the use of city services. One could assume a rough correlation between the increasing use of services and the increasing number of residential units on a parcel. An increase of the number of residents implies an increased demand for police and fire protection. The tax, however, makes no distinction—nor does Oakland in its argument—between "essential" services such as police and fire protection and "elective" services not automatically enjoyed by all residents, such as parks, libraries, museums, and youth centers. Perhaps significantly, there is no finding by the enacting body reciting that all citizens of Oakland benefit from the sustaining of these electives as well as essential services. Under the tax as it now stands, a single homeowner who heavily uses elective cultural services pays $90 per year; the owner of a five-unit parcel housing tenants who never use such services pays over twice that amount.

Respondent's most persuasive argument is based on a comparison of the tax rates for residential and vacant parcels. Assume that two persons each

own a parcel in Oakland. "A" owns a vacant lot of 5,000 square feet. "A" pays $250 a year under Measure M. "B" owns a parcel containing a five-unit residential dwelling. "B" pays $40 per unit per year, or $200 per year—$50 *less* than the vacant lot owner, notwithstanding the fact that five families will presumably use police, fire and cultural services much more than a vacant lot. In this respect, Measure M can hardly be said to be proportionate to the municipal services enjoyed.[3]

Respondent also has a valid point when he notes that the target of an excise tax can always avoid taxation by not engaging in the privilege taxed, while a landowner under Measure M pays taxes whether he uses his property or not. Of course, if the use of municipal services is a necessary incident of urban property ownership, avoiding the tax is not possible (unless, of course, the property is sold). An excise tax, however, generally is levied against an activity which can be foregone without loss of ownership, and the parcel tax does not bear this characteristic.

Oakland argues that *Heckendorn* v. *City of San Marino* (1986) 42 Cal.3d 481 [229 Cal.Rptr. 324, 723 P.2d 64] requires us to uphold Measure M. While that decision upheld a parcel tax similar to Measure M, the decision did not involve a general tax but a "special tax" imposed under California Constitution, article XIII A, section 4. That section prohibits a "special tax" from being an ad valorem tax on real property; *Heckendorn* only decided that a parcel tax based on lot size rather than value was not an ad valorem tax. The decision has no bearing on the characterization of the general tax now under review.

We conclude that Measure M is a property tax rather than an excise tax on the use of municipal services.

### III

As a property tax, Measure M violates article XIII, section 1 of the California Constitution. That section provides that "[a]ll property is taxable and shall be assessed at the same percentage" of fair market value or an authorized "value standard other than fair market value." The clear import of this language, as well as the history of property taxation in this state, leads to the conclusion that a property tax must be ad valorem. "Since

---

[3] We must give deference to any conceivable set of facts which could justify the disparities of tax rates imposed by Measure M. (See, e.g., *Franklin Life Ins. Co.* v. *State Board of Equalization* (1965) 63 Cal.2d 222, 233 [45 Cal.Rptr. 869, 404 P.2d 477].) This rule, however, applies only when the disparities have a rational basis; the ones imposed by the Oakland tax do not. In any case, we have reached the conclusion that Measure M is a property tax before discussing the problem of proportionality.

its admission into the union, California has required uniformity of property taxation. . . . [I]t is apparent that the mandated uniformity of taxation can be achieved only by applying to all property the same fraction or percentage of market value." (*Safeway Stores, Inc.* v. *County of Alameda* (1975) 51 Cal.App.3d 783, 786 [124 Cal.Rptr. 503]; see generally, *English* v. *County of Alameda* (1977) 70 Cal.App.3d 226, 234 [138 Cal.Rptr. 634]; 1 Ehrman & Flavin, *op. cit. supra,* §§ 1:02-1:15, pp. 4-25.) A non-ad valorem property tax would destroy the uniformity scheme, and must be considered in violation of California Constitution, article XIII, section 1. Both the Attorney General and the legislative counsel have reached a similar conclusion. (70 Ops.Cal.Atty.Gen. 153, 156-157 (1987); Ops. Cal. Legis. Counsel, No. 8471 (1987) School District: Taxation.)

Oakland, however, again relies on *Heckendorn* and claims that non-ad valorem property taxes are permitted, and have always been permitted, by article XIII, section 1. *Heckendorn,* however, is not direct authority for Oakland's contention because of the limited nature of its holding. The opinion never mentions article XIII, section 1 or the validity of a general non-ad valorem property tax. ■ Cases are not authority for propositions they do not consider. (*In re Tartar* (1959) 52 Cal.2d 250, 258 [339 P.2d 553].)

Nevertheless, Oakland argues that *Heckendorn* implies the validity of Measure M. Oakland reasons that (1) *Heckendorn* upheld a non-ad valorem Proposition 13 "special tax" on property; (2) Proposition 13 did not expand governmental taxing power by creating new kinds of taxes; and (3) therefore non-ad valorem property taxes must have been permitted by article XIII, section 1. Oakland's reading of *Heckendorn* is strained. The decision only validated a non-ad valorem property tax as a "special tax," a device explicitly designed by Proposition 13 to limit new taxation by requiring supermajority approval. (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 220 [149 Cal.Rptr. 239, 583 P.2d 1281]; see *Los Angeles County Transportation Com.* v. *Richmond* (1982) 31 Cal.3d 197, 201 [182 Cal.Rptr. 324, 643 P.2d 941].) *Heckendorn* did not embrace a general non-ad valorem property tax or even acknowledge one's existence. Only the non-ad valorem special property tax appears as a new entity in *Heckendorn,* and that tax is necessarily a limitation, not an expansion, of taxing power. There is thus no basis for Oakland's argument that general non-ad valorem taxes must have existed under the aegis of California Constitution, article XIII, section 1.

■ At most, *Heckendorn* can only be read as permitting non-ad valorem property taxes approved as "special taxes" by two-thirds of the voters, while not permitting general ad valorem property taxation. Both the Attor-

ney General and the legislative counsel, in the authorities cited above, concur in this interpretation. This result is consistent with decisions holding that Proposition 13 did not alter the limitations of article XIII, section 1, and with the requirement that constitutional provisions be harmonized wherever possible. (See, e.g., *State Bd. of Equalization* v. *Board of Supervisors* (1980) 105 Cal.App.3d 813, 822 [164 Cal.Rptr. 739].)

## IV

We hold that Measure M is a property tax and, as a general non-ad valorem property tax, violates article XIII, section 1 of the California Constitution. We thus need not reach the remaining issues raised by the parties.

The order to show cause is discharged. The petition for writ of mandate is denied. The parties shall bear their own costs.

King, J., and Haning, J., concurred.

A petition for a rehearing was denied November 10, 1988.