Opinion
 

 PETERSON, P. J.
 

 In this appeal, we conclude the trial court correctly ruled that the City of East Palo Alto (the City) had unconstitutionally imposed and collected a property tax not apportioned according to value, as is required by article XIII, section 1 of the California Constitution (section 1).
 

 In
 
 City of Oakland
 
 v.
 
 Digre
 
 (1988) 205 Cal.App.3d 99, 102-103 [252 Cal.Rptr. 99]
 
 (Digre),
 
 this court (Division Five) held, per Presiding Justice Low, that a similar parcel tax imposed by the City of Oakland to fund its general municipal services was unconstitutional under section 1, because it was a general property tax not assessed according to the value of the property.
 

 In the present case, we deal with a legally indistinguishable parcel tax imposed on all owners of real property in the City. The tax is levied based upon mere ownership and type of real property, and not on any separate incident to property ownership, such as the sale or transfer of the property, as would have been the case for an allowable excise tax on real property transfers. The property owner cannot avoid the tax except by relinquishing
 
 *1087
 
 ownership of the property taxed. We reject the City’s arguments that this parcel tax should have been construed by the trial court as an allowed excise tax, rather than a property tax, merely because the City disclosed that the tax was an excise tax to be utilized to pay costs for “essential governmental services.” Instead, we look to the effect of and the results generated by the imposition of the tax and conclude, as did the trial court, that it is in reality a property tax assessed and collected in violation of the provisions of section l.
 
 [1]
 

 We also conclude those persons who have been unconstitutionally required to pay this tax may sue in a class action for the refunds to which they are entitled, when each plaintiff who would join in the class action has theretofore filed a valid individual administrative claim for a refund from the City. We, therefore, affirm the trial court’s judgment.
 

 I. Facts and Procedural History
 

 The relevant facts are not in dispute. In 1988, the City discovered a shortfall in revenues. In order to make up the shortfall, in 1989, the City took action to impose a new parcel tax on all real property owners, which is in issue here.
 

 The parcel tax was first imposed by City Ordinance No. 104, which was passed by city voters by a simple majority, and not a two-thirds vote,
 
 [2]
 
 in June 1989. That ordinance expired at the end of the 1993-1994 fiscal year, but was replaced by an identical parcel tax, Ordinance No. 175, which passed at the June 1994 election by a bare majority and not by a two-thirds vote. Pursuant to Ordinance No. 175, the parcel tax remains in effect at present and has remained in effect since 1989.
 

 Although the parcel tax in issue here is a property tax in its incidents, as we discuss below, it is not apportioned according to value, as a valid property tax must be. The tax is not levied upon the assessed value or appraised value of the parcels. Instead, the tax imposes a flat fee per parcel of land, depending not upon value but upon the type of parcel. The tax charges the property owner $175 for a single-family home; $60 per unit for multi-unit rental properties, with a minimum charge of $180; and $1,000 per parcel for commercial properties. The tax is also imposed even if the unit or parcel is vacant, i.e., the owner of an empty lot must still pay a tax of $100.
 

 
 *1088
 
 This action was brought by property owners in the City (the Taxpayers), to obtain tax refunds for the imposition of the parcel tax. The Taxpayers all made administrative claims for tax refunds to the City, which the City declined to grant. The Taxpayers contended, and the trial court agreed, that the City parcel tax was legally indistinguishable from the Oakland parcel tax which we invalidated in
 
 Digre, supra,
 
 205 Cal.App.3d at pages 102-103 and was, therefore, unconstitutional under section 1. The trial court allowed the Taxpayers to maintain this action as a class action, and in a brief but cogent opinion found the City parcel tax invalid under
 
 Digre.
 

 The City filed a timely appeal from the resulting judgment.
 

 II. Discussion
 

 The trial court correctly ruled that the City parcel tax on property owners which is in issue here was unconstitutionally imposed and collected, because the tax is a property tax, not a valid excise tax, and was not levied according to the assessed value of the property.
 

 The trial court also properly ruled that this action could be maintained as a class action, because each of the class members had previously filed a tax refund claim with the City.
 

 A.
 
 The City Parcel Tax Is an Unconstitutional Property Tax, Not a Valid Excise Tax
 

 The City tax in issue here is legally indistinguishable from the unconstitutional property tax we invalidated in
 
 Digre.
 
 It is not a proper excise tax, because it simply taxes property owners for the mere ownership of property, and is not imposed as a valid excise tax would be on any of the incidents of ownership, such as sale, transfer, rental, special use of certain city services, and so on.
 

 “The determination of whether a particular tax is a property or excise tax is not always an easy matter.”
 
 (Douglas Aircraft Co., Inc.
 
 v.
 
 Johnson
 
 (1939) 13 Cal.2d 545, 550 [90 P.2d 572]
 
 (Douglas).)
 
 However, in the present case, the determination
 
 of
 
 this legal issue is in fact relatively easy. This tax is clearly a property tax, not an excise tax.
 

 At the most general level, a property tax is a tax whose imposition is triggered merely by the ownership of property.
 
 (City of Huntington Beach
 
 
 *1089
 
 v.
 
 Superior Court
 
 (1978) 78 Cal.App.3d 333, 340 [144 Cal.Rptr. 236] [“Real property taxes are imposed on the ownership of property as such . . . .”].) An excise tax, by contrast, is a tax whose imposition is triggered not by ownership but instead by some particular use of the property or privilege associated with ownership, such as transfer of the parcel to a new owner.
 
 (Ibid.)
 
 The determination of whether a tax is a property tax or an excise tax often determines whether the tax was legally imposed. Excise taxes are not subject to the California constitutional provisions restricting imposition of property taxes (see § 1) and, therefore, municipalities have an obvious incentive to attempt to relabel their property taxes as excise taxes to evade those provisions. (See
 
 Digre, supra,
 
 205 Cal.App.3d at pp. 104-109.)
 

 The tax in question here is a property tax under section 1 and
 
 Digre,
 
 and cannot reasonably be construed as an excise tax on city services in order to escape this conclusion. The City parcel tax is imposed upon every owner of real property in the City, without regard to the use of the property or the use of any city services. It is imposed upon real property which is vacant and unused, and upon owners who reside elsewhere but own land in the City. It is collected by the county tax assessor annually as part of the regular property tax collection, and nonpayment of the tax results in imposition of a tax lien on the real property, just as would nonpayment of other real property taxes. The owner of the property, not any other person such as an occupant or tenant who might use city services, is also personally responsible for payment of the tax. Under our
 
 Digre
 
 decision, the City parcel tax is a property tax, not an excise tax, and the trial court properly so ruled. (See 205 Cal.App.3d at pp. 104-109.)
 

 The City, however, argues that because it designated the tax as an excise tax on the use of city services, by ordinance, this is somehow determinative. We reject this contention. “The character of a tax must be determined by its incidents, and from the natural and legal effect of the language employed . . . .”
 
 (Flynn
 
 v.
 
 San Francisco
 
 (1941) 18 Cal.2d 210, 214 [115 P.2d 3]
 
 (Flynn).)
 
 The enacting body’s designation of a tax as an excise tax or property tax is entitled to some weight, but is “not conclusive.”
 
 (Douglas, supra,
 
 13 Cal.2d at p. 550; accord,
 
 Digre, supra,
 
 205 Cal.App.3d at p. 105.) This is especially true here, because the tax was originally correctly labeled as a “tax on all Residential and Commercial Units,” i.e., as a real property tax, and was relabeled as an excise tax rather than a property tax by the city attorney in 1989 after our
 
 Digre
 
 decision was filed. The City hoped thereby to escape the effect of that decision by simply relabeling the title of the tax.
 

 Unfortunately for the City, it did not go beyond changing the label on the tax; nothing was done to revise the actual provisions of the tax so as to cause
 
 *1090
 
 a relevant legal change in “its incidents, and ... the natural and legal effect of the language . . . .”
 
 (Flynn, supra,
 
 18 Cal.2d at p. 214.) Despite the incongruous excise tax label, and the City’s strained argument that it has imposed an excise tax upon the use of city services, the tax in question here is not in fact triggered by any particular use of city services. It is not limited to users of city services, and cannot reasonably be rationalized as an excise tax levied upon use of city services, as the City would have us believe. It is imposed simply upon owners, not users of city services.
 
 [3]
 
 As in
 
 Digre,
 
 it is obvious that the excise tax label was simply affixed to a previously contemplated property tax as an after the fact rationalization or attempt to evade section 1. (See
 
 Digre, supra,
 
 205 Cal.App.3d at pp. 104-109.)
 
 [4]
 

 If the City were allowed to impose the tax in question here, a gaping hole would be created in the constitutional provisions which at present protect California property owners from the imposition of local taxes which are not apportioned by value, or which are not approved by a two-thirds vote. This may explain why a number of California cities have filed an amici curiae brief in this appeal, urging that we overturn the proper order of the trial
 
 *1091
 
 court. We will not do so. We understand and are not unsympathetic to the pressing problems of municipal finance which local jurisdictions face. Their sources of revenue derived from real property, however, are restricted. Public entities may not resolve their revenue shortfalls through the subterfuge of enacting taxes on real property which violate those constitutional restrictions by labeling such taxes something they are not. We are required to uphold such constitutional provisions and invalidate such efforts to evade them, regardless of the merit of the goals for which such tax revenue is sought. (See
 
 Digre, supra,
 
 205 Cal.App.3d at pp. 104-109.)
 

 The City contends the trial court’s ruling should nevertheless be reversed, because in enacting the subject tax, the City carefully followed an alleged “road map” for valid enactment of an excise tax purportedly provided by our prior
 
 Digre
 
 decision. The City has created a map
 
 Digre
 
 did not posit.
 
 Digre
 
 was not concerned with providing means of evading the constitutional obstacle of section 1; rather, the holding in
 
 Digre
 
 was properly confined to the
 
 overturning
 
 of the Oakland parcel tax: “In so doing, we only invalidate the tax ordinance before us.” (205 Cal.App.3d at p. 102.) However, in order to avoid any further instances of identical future contentions, we will address and reject them in greater detail.
 

 In
 
 Digre,
 
 we dealt with a vaguely worded tax ordinance, Measure M, enacted by the City of Oakland, which the City of Oakland’s own director of finance, Mr. Digre, had refused to enforce because it was unconstitutional. (205 Cal.App.3d at p. 102.) We had considerable difficulty determining the true intent of the voters in enacting Measure M: “Unfortunately, Measure M is only explicit about what it is not. . . . It is not clear from the text of the measure or the ballot arguments that the privilege of use of services is the object of the parcel tax.”
 
 (Id.
 
 at p. 105.) In order to determine its constitutionality, we turned from the legislation and its legislative history to an analysis of the true incidents and practical effect of Measure M: “The nomenclature and text of Measure M being inconclusive, we examine
 
 the incidents and practical effect
 
 of the parcel tax against the backdrop of the various distinctions drawn between excise and property taxes.”
 
 (Id.
 
 at p. 106, italics added.) We, thus, made it clear in
 
 Digre
 
 that the
 
 primary
 
 test for determining whether a tax imposed on real property was an excise tax or a property tax was an analysis of those incidents and practical effects of the imposition of the tax, not the appellation the taxing entity gave it.
 

 We then reached the critical analysis necessary to our holding in
 
 Digre:
 
 “Measure M is a tax on property ownership in all its incidents. The tax is imposed on all property whether or not the property is used or lies vacant,
 
 *1092
 
 and regardless of whether the property is used as a residence or a commercial development.” (205 Cal.App.3d at p. 106.) “Moreover, consistent with the taxation of property ownership, the parcel tax falls due annually at fixed times. It is difficult to consider the cases discussed above and not conclude that Measure M is a property tax.”
 
 (Id.
 
 at p. 107.) Thus, Measure M did not pass constitutional muster because it was a tax on mere ownership, not any particular use of property; it was not assessed upon the happening of some event constituting a use, such as a transfer of ownership, and was instead assessed annually regardless of use, like any other property tax. The same is obviously true of the parcel tax in issue in the present appeal.
 

 We were also careful in
 
 Digre
 
 to note that we were not going beyond the facts of that case. “We do not hold that a flat-fee parcel tax must necessarily be considered a property tax.” (205 Cal.App.3d at p. 102.) “We do not disapprove of the concept of a parcel tax to fund the maintenance of city services directly or indirectly used by all property owners. Measure M, however, cannot be upheld on this basis.”
 
 (Id.
 
 at p. 107.) The same is also true here. We can conceive of flat fee parcel taxes which might arguably pass constitutional muster under section 1. For instance, a flat fee of $100 per parcel for the transfer or rezoning of a parcel, assessed at the time of the transfer or application for rezoning, would not violate section 1, because it would be a valid excise tax based upon the use of the parcel; and its practical effect would not be to tax the ownership of the parcel, but instead to tax its use. Under
 
 Digre,
 
 it is the practical effect of the tax, and the nature of the triggering event which causes the tax to come due, which determines its validity. (Pp. 106-107.) The tax in issue here, measured by that
 
 Digre
 
 test, is an unconstitutional property tax.
 

 Both the City and the Taxpayers, however, look back beyond
 
 Digre,
 
 expending considerable energy on rationalizing the precise holdings of a small number of older cases which dealt with the issue of defining excise taxes and property taxes in the context of personal property, not real property. We summarize the holdings of these older personal property cases very briefly, because we find them relatively unilluminating in the context of a tax on real property such as the one in issue here.
 

 First, in the early case of
 
 Ingels
 
 v.
 
 Riley
 
 (1936) 5 Cal.2d 154, 161 [53 P.2d 939, 103 A.L.R. 1], our Supreme Court held that a tax on the operation of motor vehicles on the highways was an excise or privilege tax, not a tax on the property value of the car. The contrary is true in this case, where the tax is imposed simply as a result of ownership of real property, not any particular privilege associated with ownership, such as sale or transfer.
 

 
 *1093
 
 In
 
 Douglas, supra,
 
 13 Cal.2d at pages 550-551, our high court upheld an excise or privilege tax based upon the use, storing, or consumption of personal property because the court determined it was not levied upon mere property ownership. Since the tax was imposed for use, and was not imposed for mere ownership, the case is consistent with our analysis.
 
 [5]
 

 In
 
 Flynn, supra,
 
 18 Cal.2d at pages 215-216, our high court struck down a San Francisco ordinance which purported to be a car license fee or excise tax, but was in fact a tax on the mere ownership of a vehicle and, therefore, a property tax. The case supports our ruling.
 

 And in
 
 Pesola
 
 v.
 
 City of Los Angeles
 
 (1975) 54 Cal.App.3d 479, 484-485 [126 Cal.Rptr. 580], an appellate court upheld a local ordinance which imposed a license fee or excise tax of $6 per year on the keeper of any “equine” within the jurisdiction. The precise relevance of this horse license case is difficult to ascertain. It seems likely that the case could properly have been corralled into the excise tax category, based upon the fact that horses generally require cleanup activity when they perambulate through a highly urbanized area like Los Angeles; the small horse license fee was obviously imposed and justified by public welfare or regulatory concerns, rather than being intended as a major source of tax revenue.
 
 [6]
 

 If anything can be gleaned from these excise or privilege tax cases with widely divergent facts, dealing with licenses for animals and excise or use taxes or license fees imposed on personal property, it is simply that “The determination of whether a particular tax is a property or excise tax is not always an easy matter.”
 
 (Douglas, supra,
 
 13 Cal.2d at p. 550.) That is especially true when the tax is imposed not on real property as in the case at
 
 *1094
 
 bench, but on personal property, where the exercise of mere ownership rights may be hard to distinguish from use.
 
 [7]
 

 Significantly, however, the City has not cited and our own research has not discovered any case holding that a tax imposed on owners of real property merely because they own real property is an excise tax, rather than a property tax. We believe the reason such a case is difficult to find is because such a case does not exist. Our
 
 Digre
 
 decision also explains some of the reasons why such a case should not exist. (See 205 Cal.App.3d at pp. 104-109.)
 
 [8]
 

 
 *1095
 
 The trial court properly ruled that the parcel tax in question here is an. invalid property tax imposed in violation of section l.
 
 [9]
 

 B.
 
 Class Action
 

 The trial court also properly ruled that this action could be maintained as a class action.
 

 All the individual taxpayers who are parties to this action have filed separate administrative claims for tax refunds with the City. Their claims asserted in this litigation are obviously appropriate for class action treatment, since they all make the same legal claim against the City. The trial court did not abuse its discretion in approving the class; as Division Four of this district has observed, such class action treatment is proper where the plaintiffs’ administrative remedies have been exhausted, and the legal issues presented by their claims are identical. (See
 
 Farrar
 
 v.
 
 Franchise Tax Bd.
 
 (1993) 15 Cal.App.4th 10, 16-17 [18 Cal.Rptr.2d 611]
 
 (Farrar).)
 

 The City nevertheless contends the trial court abused its discretion by granting class action status. The City relies upon the recent decision by Division Two of this court in
 
 Neecke
 
 v.
 
 City of Mill Valley
 
 (1995) 39 Cal.App.4th 946, 959-960 [46 Cal.Rptr.2d 266]
 
 (Neecke)
 
 and the prior decision of our Supreme Court in
 
 Woosley
 
 v.
 
 State of California
 
 (1992) 3 Cal.4th 758, 788-789 [13 Cal.Rptr.2d 30, 838 P.2d 758]
 
 (Woosley),
 
 which was analyzed in
 
 Neecke.
 
 The City’s reliance on
 
 Neecke
 
 and
 
 Woosley
 
 is misplaced. In those cases, unlike this one, not every member of the proposed class had filed a separate administrative refund claim; the
 
 Woosley
 
 and
 
 Neecke
 
 courts held that a separate administrative claim by each plaintiff is a prerequisite to a class action lawsuit. In this case, each plaintiff has made such an administrative claim complying with the
 
 Woosley-Neecke
 
 conditions; and a class action is, therefore, proper to determine the validity of the separate fully exhausted administrative claims of the plaintiff taxpayers. (See
 
 Farrar, supra,
 
 15 Cal.App.4th at pp. 16-17.) It would be wholly injudicious to hold that our busy and overburdened trial courts must be besieged by a multiplicity of identical taxpayer actions, when one such action, as here, is sufficient to afford the parties a timely and effective remedy consonant with the requirements of due process. (See
 
 ibid.)
 
 The trial court did not abuse its discretion in treating this action as a class action.
 

 
 *1096
 
 III. Disposition
 

 The judgment is affirmed.
 

 Haning, J., and Jones, J., concurred.
 

 A petition for a rehearing was denied April 17, 1997, and on April 22, 1997, the opinion was modified to read as printed above. The petition of appellant City of East Palo Alto for review by the Supreme Court was denied June 25, 1997.
 

 [1]
 

 Section 1 provides, in relevant part, that property taxes must be imposed upon an ad valorem basis, i.e., “(a) All property is taxable and shall be assessed at the same percentage of fair market value. . . .”
 

 [2]
 

 California Constitution, article XIIIA, section 4 provides: “Cities, counties and special districts, by a two-thirds vote of the qualified electors of such district, may impose special taxes on such district. . . .”
 

 [3]
 

 The City argues that because some owners may be able to shift the burden of the tax to their tenants by increasing rents, therefore, it is really not a property tax. Acceptance of this argument, however, would cause every property tax to become an excise tax. Under
 
 Digre,
 
 it is the initial burden of the tax, not the ripple effects of the tax through the economy, which determines whether it is an excise or property tax. (See 205 Cal.App.3d at pp. 104-109.) Of course, the provision of a tax lien to enforce the tax obligation, in addition to personal liability of the owner rather than the occupant, also indicates the tax is a property tax, not an excise tax. The fact that a landowner is authorized to pass through the tax to a tenant does not shift its classification to an excise tax. The ultimate target for collection of the tax is the real property itself through lien foreclosure. The tax lien provision was added to the tax in order to make it possible for the City to take out a loan on the projected tax proceeds; the City’s bank refused to make such a loan unless a tax lien provision was included, thereby establishing that it was the lien against property, not the personal liability of an owner, which is the critical feature of the tax in terms of the reality of its incidents upon taxpayers and municipal finance. Some tenants, for example, are exempt from reimbursement to the landlord in any event. Under the terms of section 4(a) of Ordinance No. 175, a tenant of a nonoccupant owner is exempt from reimbursing that owner for such tax if the “tenant is exempt from taxation as specified herein.”
 

 [4]
 

 The City also contends its tax must be an excise tax, not a property tax, because it made administrative “findings” which are “conclusive” to the effect that the fees charged per parcel are proportional and reasonable charges for the services provided to each parcel. We rejected a similar argument in
 
 Digre, supra,
 
 205 Cal.App.3d at page 109, footnote 3, where we observed, and reiterate in the case at bench, that we
 
 need not determine
 
 whether the charges made are proportionate to the benefit conferred by the availability of city services, when in fact the tax is a property tax rather than an excise tax, as here. In addition, as in
 
 Digre,
 
 the flat rate charges per parcel are not supported by any rational basis and are simply arbitrary numbers arrived at by the City in its quest to raise revenue. We question, for example, how a vacant, unused lot in the City really benefits to any appreciable extent from the provision of city services so as to justify collection of a $100 per parcel tax, if an occupied home is charged only $175. (See
 
 id.
 
 at pp. 104-109.)
 

 [5]
 

 The City’s position is further weakened in analyzing those cases by section 2(b) of its Ordinance No. 175. Section 2(b) defines the “essential governmental services,” contended to be the rationale of its tax, as those which “must be provided by any municipal government as a matter of necessity and not individual choice.” This simply concedes that payment of the parcel tax is not a condition precedent to the landowner’s exercise of any privilege of use of the City’s services. “ ‘A privilege tax . . . is imposed upon the right to exercise a privilege, and its payment is invariably made a condition precedent to the exercise of the privilege involved.’ ”
 
 (Douglas, supra,
 
 13 Cal.2d at p. 550.)
 

 [6]
 

 Similarly, in
 
 City of Glendale
 
 v.
 
 Trondsen
 
 (1957) 48 Cal.2d 93, 103 [308 P.2d 1], a city acted with public welfare in mind when it instituted a garbage or rubbish removal service and charged occupants, but not necessarily owners, of property a small fee for making garbage pickup available. This appears to have been a valid excise tax based upon the use or privilege of garbage pickup provided by the city; and it certainly was not a tax imposed upon every owner of property, since the fee was charged to occupants, not owners.
 

 [7]
 

 The City and the Taxpayers also expend some energy in their briefs in an attempt to analyze this tax in terms of comparative avian morphology. The Taxpayers argue that the tax in question is like an unidentified bird which may be identified as a duck by its incidents of appearance, waddling, and quacking, citing the observation by five members of our Supreme Court that “ ‘if an object looks like a duck, walks like a duck and quacks like a duck, it is likely to be a duck.’ ”
 
 (Phillippe
 
 v.
 
 Shapell Industries
 
 (1987) 43 Cal.3d 1247, 1256 [241 Cal.Rptr. 22, 743 P.2d 1279], quoting from
 
 In re Deborah C.
 
 (1981) 30 Cal.3d 125, 141 [177 Cal.Rptr. 852, 635 P.2d 446] (conc. opn of Mosk, J.).) It is true that the tax in question here resembles, in all its incidents, a property tax, just as our Supreme Court deduced that its own hypothetical unidentified bird was likely to be a duck. The City, in a responsive jocular vein, contradicts this analogy by contending the unidentified bird might instead be a goose: “If the [Constitution chooses to distinguish between a duck and a goose, then the observation of feathers, wings, waddling, and webbed feet is immaterial.” While we recognize that one observing a goose which
 
 quacked
 
 like a duck would be quite startled, we are hesitant to give further attention to this zoological debate. We prefer to duck the issue. However, because the parties have briefed the matter in this ornithological fashion, we feel obliged briefly to address it in their terms, at the risk of repeating some old canards in the process. The parcel tax in question certainly resembles neither a goose nor an excise tax. The word goose might be useful here either as a verb or a noun, but not with reference to any excise tax. We note the possibility that the tax might also be likened to a turkey or a dodo, but we need not pursue the matter further. We are not, here, merely judging from labels or outward appearances which might be falsified. We are in the position of an observer who sees an unidentified bird which mates with a duck, and lays eggs which hatch into ducks. The bird of such life experiences is, by definition, a duck, and remains a duck even if a resourceful counsel paints it white and puts a sign around its neck labeling it a goose.
 

 [8]
 

 In light of our conclusion that the parcel tax in issue here is a property tax rather than an excise tax, we need not determine whether it would also be invalid as a “special tax[]” imposed in violation of the supermajority requirement of section 4, article X13IA of the California Constitution. (See
 
 Heckendorn
 
 v.
 
 City of San Marino
 
 (1986) 42 Cal.3d 481, 488-489 [229 Cal.Rptr. 324, 723 P.2d 64] [A new tax imposed after a positive vote by two-thirds of the electorate was a valid special tax under article XIIIA.]; see also
 
 Rider
 
 v.
 
 County of San Diego
 
 (1991) 1 Cal.4th 1, 13-15 [2 Cal.Rptr.2d 490, 820 P.2d 1000].)
 

 [9]
 

 We also have no occasion to address the cross-appeal brought by the Taxpayers, which concerned the trial court’s decision not to consider as evidence the declaration of Mr. Kiani, who opined that the City’s rent board did not, in fact, allow owners who are also landlords to shift tiie parcel tax to their tenants. The trial court found it unnecessary to consider this evidence, as do we.