Filed 1/31/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JIMMIE J. DONDLINGER, | B284932 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC645369) |
| v. | |
| LOS ANGELES COUNTY REGIONAL PARK AND OPEN SPACE DISTRICT, | |
| Defendant and Respondent. | |

     APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant, Judge.  Affirmed.

     Capstone Law, Glenn A. Danas, Liana Carter, Robert K. Friedl; Dakessian Law, Mardiros H. Dakessian, Zareh Jaltorossian, and Ruben Sislyan for Plaintiff and Appellant.

     Miller Barondess, Louis R. Miller, Brian A. Procel, David I. Bosko; Greines, Martin, Stein & Richland, Timothy T. Coates, and Alan Diamond for Defendant and Respondent.

_____

Jimmie Dondlinger filed suit seeking to invalidate a voter-approved special property tax imposed by the Los Angeles County Regional Park and Open Space District (the District). The trial court granted the District's motion for judgment on the pleadings and denied Dondlinger leave to amend the complaint. Based on our interpretation of Public Resources Code section 5566, we affirm the trial court's judgment.

## BACKGROUND

Pursuant to Public Resources Code section 5566 and Government Code section 53722, the Los Angeles County Board of Supervisors, acting as the governing body of the District, enacted a resolution on July 5, 2016 to place on the November 8, 2016 ballot the language: "To replace expiring local funding for safe, clean neighborhood/city/county parks; increase safe playgrounds, reduce gang activity; keep neighborhood recreation/senior centers, drinking water safe; protect beaches, rivers, water resources, remaining natural areas/open space; shall 1.5 cents be levied annually per square foot of improved property in Los Angeles County, with bond authority, requiring citizen oversight, independent audits, and funds used locally?" The measure, on the November 2016 ballot as Measure A, was to create a tax "on all improved parcels in the District at a rate of 1.5 cents per square foot of structural improvements, excluding the square footage of improvements used for parking."

Los Angeles County voters approved Measure A by a vote of 74.9 percent in favor to 25.1 percent opposed.

On January 3, 2017, Jimmie Dondlinger, who owned real property in Los Angeles County subject to the tax created by Measure A, filed a complaint against the District seeking to have the Measure A tax invalidated. Dondlinger filed a petition and

2

complaint seeking a writ of mandate under Code of Civil Procedure section 1085, and alleging causes of action for reverse validation under Code of Civil Procedure section 863 and declaratory and injunctive relief.

Dondlinger's complaint alleged that Measure A did not comply with Public Resources Code section 5566 because the tax it created did not apply uniformly to all taxpayers.  By definition, Dondlinger alleged, a tax based on square footage of structural improvements "cannot apply uniformly to all taxpayers because the square footage of all parcels with structural improvements within the District are not the same."  Likewise, Dondlinger alleged, a tax that applied to improved parcels but not unimproved parcels did not apply uniformly to taxpayers.  And third, a distinction between structural improvements used for parking and structural improvements not used for parking could not be applied uniformly to taxpayers.

The District filed an answer, and then shortly thereafter filed a motion for judgment on the pleadings.  The trial court determined that because the statute required uniformity of application to taxpayers as distinguished from uniformity of application to real property, the statute allowed the District to create the distinctions it did between structural improvements used for parking and those not used for parking.  The trial court granted the District's motion for judgment on the pleadings and denied Dondlinger leave to amend his complaint.  The trial court entered judgment for the District on August 15, 2017. Dondlinger filed a timely notice of appeal.  (Gov. Code, § 50077.5, subd. (b).)

3

**DISCUSSION**

**A.    The trial court properly granted the District's motion for judgment on the pleadings**

"A motion for judgment on the pleadings is properly granted when the 'complaint does not state facts sufficient to constitute a cause of action against that defendant.' [Citation.] The grounds for the motion must appear on the face of the challenged pleading or from matters that may be judicially noticed. [Citation.] The trial court must accept as true all material facts properly pleaded, but does not consider conclusions of law or fact, opinions, speculation, or allegations contrary to law or facts that are judicially noticed. [Citation.]

"We independently review the trial court's ruling on a motion for judgment on the pleadings to determine whether the complaint states a cause of action. [Citation.] In doing so, we accept as true the plaintiff's factual allegations and construe them liberally. [Citation.] If the trial court's ruling on a motion for judgment on the pleadings is correct upon any theory of law applicable to the case, we will affirm it, even if we may disagree with the trial court's rationale." (*Stevenson Real Estate Services, Inc. v. CB Richard Ellis Real Estate Services, Inc.* (2006) 138 Cal.App.4th 1215, 1219-1220.)

Public Resources Code section 5566 states: "It is the intent of the Legislature to provide a district with authority to impose special taxes. A district may impose special taxes pursuant to the procedures set forth in Article 3.5 (commencing with Section 50075) of Chapter 1 of Part 1 of Division 1 of Title 5 of the Government Code. In exercising that authority, a district may establish a zone or zones and a rate of tax for each zone, which is to be applied uniformly to all taxpayers within the zone. All

4

revenue from a tax levied in a zone shall be expended in connection with land and facilities that are located in that zone, including a reasonable amount thereof allocated for general administrative expenses of the district."

Dondlinger continues to rely on the contentions in the complaint to support the argument that the Measure A special tax cannot "be applied uniformly to all taxpayers." In the complaint, Dondlinger argued that the tax cannot be applied uniformly because each different property has a different square footage of structural improvements, that the tax cannot be applied uniformly because it does not apply to unimproved property, but does apply to structural improvements on property, and that the tax cannot be applied uniformly because it taxes property differently based on different uses of structural improvements on the property. On appeal, Dondlinger also argues that the Measure A special tax is a "use tax" or excise because it imposes a tax based on the way the property is used. (See *City of Oakland v. Digre* (1988) 205 Cal.App.3d 99, 106 (*Digre*).)

The District, apparently conceding that the tax cannot be "applied uniformly to all taxpayers" in the District, argues that because the tax is a tax on property as opposed to a tax on persons (in rem v. in personam), it need not apply uniformly. If the Legislature had intended a property tax to be applied uniformly, the District contends, it could have written "all taxpayers *or real property*" in the statute, as it has done in more than a score of other statutes.

As the parties' contentions suggest, this case turns entirely on questions of statutory interpretation. "In interpreting the statutory language at issue, '[w]e begin with the fundamental

5

rule that our primary task is to determine the lawmakers' intent.' [Citation.] The process of interpreting the statute to ascertain that intent may involve up to three steps. [Citations.] As other courts have noted, the key to statutory interpretation is applying the rules of statutory construction in their proper sequence. [Citations.] We have explained this three-step sequence as follows: 'we first look to the plain meaning of the statutory language, then to its legislative history and finally to the reasonableness of a proposed construction.' [Citation.] [¶] . . . [¶]

"[T]he 'plain meaning' rule does not prevent a court from determining whether the literal meaning of the statute comports with its purpose. [Citations.] Thus, although the words used by the Legislature are the most useful guide to its intent, we do not view the language of the statute in isolation. [Citation.] Rather, we construe the words of the statute in context, keeping in mind the statutory purpose." (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1082-1083; *Orange County Employees Assn. v. County of Orange* (1991) 234 Cal.App.3d 833, 841 ["[t]he meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible"].)

Both Dondlinger and the District argue that the plain language of the statute requires us to find in their favor. Both Dondlinger and the District suggest that the statute's legislative history, which they contend we should ignore because the plain language of the statute is unambiguous, supports their different interpretations of the statute. And both Dondlinger and the District rely on *Borikas v. Alameda Unified School Dist.* (2013) 214 Cal.App.4th 135 (*Borikas*) to support their arguments.

6

As we discuss more fully below, each of Dondlinger's contentions requires us to isolate individual words and ignore the context even of the sentences in which they are used. The trial court found that the statute did "not have a plain meaning with regard to the uniformity requirement for a single zone extending to the district's boundaries," and relied heavily on parts of the legislative history to divine a legislative intent that ultimately redounded to the District's benefit. We adopt neither of these approaches wholesale; we find no ambiguity in the statute's language.

*Borikas*, upon which both parties lean heavily, dealt with an Alameda Unified School District special tax measure that "taxe[d] residential and commercial/industrial properties differently. Non-exempt residential parcels [were] taxed at $120 per year. Commercial and industrial parcels less than 2,000 square feet [were] also taxed at $120 per year; those greater than 2,000 square feet [were] taxed at $0.15 per square foot to a maximum of $9,500 per year." (*Borikas*, *supra*, 214 Cal.App.4th at p. 140.)

The enabling statute for the *Borikas* tax measure was Government Code section 50079, which stated: "As used in this section, 'qualified special taxes' means special taxes that apply uniformly to all taxpayers or all real property within the school district . . . ." (Gov. Code, § 50079, subd. (b)(1).) The *Borikas* court concluded that the Legislature added this language to section 50079, subdivision (b)(1) to limit the tax-levying authority it granted under that statute beyond the constitutional equal protection limits that would have applied even absent such language. (*Borikas*, *supra*, 214 Cal.App.4th at p. 151.)

The District highlights the difference between Government Code section 50079 and Public Resources Code section 5566 to argue that the Legislature *could* have limited the authority districts have to distinguish between structural improvements and unimproved parcels. Dondlinger contends, however, that the difference between the two statutes is irrelevant; we should only consider the language of *this* statute by itself, and we should interpret it the same way the *Borikas* court interpreted Government Code section 50079's uniformity requirement. That the statute does not contain the words "real property" means nothing, Dondlinger says, because the word "taxpayer"— "[s]omeone who pays or is subject to a tax"—defines who must be treated uniformly without regard to what is being taxed. (Black's Law Dict. (10th ed. 2014) p. 1690.)

We observe that were we to adopt Dondlinger's interpretation of Public Resources Code section 5566, no property or parcel tax could ever be valid. Even the most earnest attempt at uniformity could not have a uniform *effect,* which is what Dondlinger's assertions presuppose the statute requires; a simple parcel tax applied to each parcel in a zone, zones, or the District would treat "taxpayers" differently based on the number of parcels they owned. Not even the parcel tax that the *Borikas* court approved—a flat $120 per parcel tax—would survive under Dondlinger's requested interpretation. (See *Borikas*, *supra*, 214 Cal.App.4th at p. 169.)

Public Resources section 5566 requires that collected tax money be spent on parks and recreation land and facilities. The statute attempts to fund that land and those facilities by taxing the facilities where the people that will ultimately use the land and facilities work and live.

8

We do not read the statute to require a uniform *effect* or *outcome*, but rather uniform *application*. We disagree with Dondlinger's most basic premise that the tax is not uniformly applied because arithmetic functions render outcomes different for different taxpayers based on property size, type, or use, regardless of how taxpayer is defined. Each taxpayer is required to pay the same 1.5 cents per square foot of structural improvements on their real property not used for parking. One is only a "taxpayer" for purposes of the Measure A special tax if they own real property that contains structural improvements not used for parking. Classes of property are not treated differently; a residential garage is not treated differently from a commercial parking garage, and a house is not treated differently from an apartment building or a shopping mall.

The District's Measure A special tax satisfies Public Resources Code section 5566's uniformity requirement. The trial court did not err when it granted the District's motion for judgment on the pleadings.

## B. The trial court did not abuse its discretion by denying leave to amend the complaint

Dondlinger contends that the trial court abused its discretion by denying leave to amend the complaint. Dondlinger contends that in the trial court, he also argued that the Measure A special tax was a use tax or excise, which the District could not impose under Public Resources Code section 5566. Dondlinger explains that the tax is a "use tax" because it differentiates between structural improvements on property based on the way those improvements are used. According to Dondlinger, the Measure A special tax is a "tax on the privilege of exercising the taxed incident of ownership," which Dondlinger contends makes

9

it a use tax (or an excise) under California law. (See *Digre*, *supra*, 205 Cal.App.3d at p. 106.) Dondlinger's contention asks us to strip away all context and focus narrowly on the fact that the use of structural improvements for a certain purpose renders those particular structural improvements exempt from the special tax.

We do not agree with Dondlinger's premise that the Measure A special tax is a "tax on the privilege of exercising the taxed incident of ownership." There is no incident of ownership that the Measure A special tax is taxing. The context and use of excise and use taxes further confirms this conclusion. "[A] property tax is generally due and payable annually at a set time," for example. (*Digre*, *supra*, 205 Cal.App.3d at p. 106.) "An excise tax, on the other hand, is generally due and payable only when the taxed privilege is exercised, and is therefore 'proportioned according to the extent of the privilege enjoyed.' " (*Ibid.*)

Dondlinger's citations to various use tax and excise statutes are no more persuasive. Revenue and Taxation Code section 6201, for example, defining a "use tax" notes that it is "imposed on the storage, use, or other consumption in this state of tangible personal property . . . ." Section 7203—the "use tax" provision of the Bradley-Burns Uniform Local Sales and Use Tax Law that Dondlinger relies on—again defines the use tax as "a complementary tax upon the storage, use or other consumption in the county of tangible personal property . . . ." And indeed the definitions of "use tax" and "excise" speak in terms that exclude real property taxes. A use tax is a "tax imposed on the use of certain goods that are bought outside the taxing authority's jurisdiction. Use taxes are designed to discourage the purchase of products that are not subject to the sales tax." (Black's Law

10

Dict., *supra*, at p. 1688.)  An excise is a "tax imposed on the manufacture, sale, or use of goods (such as a cigarette tax), or on an occupation or activity (such as a license tax or an attorney occupation fee)."  (*Id.* at pp. 684-685.)

The Measure A special tax is neither a use tax nor an excise.  Dondlinger's alternative theory, therefore, fails as a matter of law.  The trial court did not abuse its discretion when it denied Dondlinger leave to amend.  (*Balikov v. Southern California Gas Co.* (2001) 94 Cal.App.4th 816, 819-820.)

## DISPOSITION

The judgment is affirmed.  Respondent is entitled to costs on appeal.

CERTIFIED FOR PUBLICATION.


CHANEY, J.

We concur:


ROTHSCHILD, P. J.


BENDIX, J.