Filed 4/15/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| THE RETAIL PROPERTY TRUST, | |
| Plaintiff and Appellant, | G064887 |
| v. | (Super. Ct. No. 30-2023-01311339) |
| ORANGE COUNTY ASSESSMENT APPEALS BOARD NO. 1, | O P I N I O N |
| Defendant and Respondent; | |
| COUNTY OF ORANGE, | |
| Real Party in Interest and Respondent. | |


Appeal from a judgment of the Superior Court of Orange County, Nathan R. Scott, Judge. Affirmed. Appellant's Request for Judicial Notice. Denied. Respondent's Request for Judicial Notice. Denied.

Vallejo, Antolin, Agarwal & Kanter, Peter B. Kanter and Matthew J. Rilla, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Leon J. Page, County Counsel, D. Kevin Dunn and Daniel L. Richards, Deputy County Counsel, for Real Party in Interest and Respondent.

\* \* \*

Plaintiff The Retail Property Trust owns the Brea Mall in the city of Brea (the property).[1] As a result of the COVID-19 pandemic (the pandemic), access to the property was substantially restricted due to governmental orders and the Governor's proclamation of a state of emergency issued on March 4, 2020 as to all counties. As a result of those restrictions, plaintiff filed applications with the Orange County tax assessor (the assessor) seeking tax disaster relief under Revenue and Taxation Code section 170, subdivision (a)(1) (Calamity Applications).[2] Plaintiff sought to have the property reassessed on the ground it had been damaged as a result of the pandemic. The assessor summarily denied the Calamity Applications, and in response to plaintiff's administrative appeal, respondent Orange County Assessment Appeals Board No. 1 (the Board) upheld the assessor's decision. Plaintiff then sought relief from the trial court. Following a court trial, the trial court ruled plaintiff was not entitled to relief under section 170(a)(1) as a matter of law.

We agree with the trial court's conclusion and affirm the judgment.

---

[1] The property consists of an approximately 40-acre site with an enclosed shopping mall and associated improvements.

[2] Section 170, subdivision (a)(1), is hereafter referred to as section 170(a)(1).

FACTS AND PROCEDURAL HISTORY

I.

BACKGROUND RELATING TO THE CALAMITY APPLICATIONS

During the time period relevant to its Calamity Applications, plaintiff owned and leased the property. During the 2019–2020 and 2020–2021 assessment years, plaintiff paid property taxes assessed by the assessor for its property.

On March 4, 2020, pursuant to Government Code sections 8625 and 8558, subdivision (b), the Governor of California declared the entire state was in a state of emergency due to the pandemic. As a result, the property was closed to the public beginning on or around March 19, 2020. Ultimately, the property was ordered closed for more than 100 days. Even after restrictions were eased and limited access was allowed, the property was still subject to significant restrictions on access, operations, occupancy, and use due to the persistence of the pandemic in the area. According to plaintiff, such restricted access included, but was not limited to, full and partial closures of the property; full and partial closures of businesses operating within the property; restrictions on the number of people allowed on the property and within businesses that operated on the property; and restrictions on the operating hours of the property and the businesses operating within the property.

On March 1, 2021, plaintiff filed the Calamity Applications, alleging the pandemic had diminished the value of the property. On March 23, 2021, the assessor denied tax relief on the grounds that there was "[n]o physical damage to property."

## II.

### ASSESSMENT APPEALS BOARD PROCEEDINGS

On September 22, 2021, plaintiff filed assessment appeal applications with the Board appealing the assessor's decision.

The Board determined the hearing should be bifurcated into two phases. The first phase would address purely legal issues—specifically, (1) whether the Board has jurisdiction to decide whether the assessor's summary denial of a claim for a calamity reassessment under Revenue and Taxation Code section 170 was improper; and (2) if the Board has jurisdiction, whether the denial of the Calamity Applications was proper.

On December 8, 2022, following oral argument, the Board issued written findings on the first phase. It found in favor of plaintiff on the jurisdictional issue and in favor the assessor on whether the denial of tax relief was proper. The Board concluded the weight of authority compelled the conclusion that physical damage is required before relief under section 170 can be granted. The Board also rejected plaintiff's argument that the COVID-19 virus itself could cause indirect physical damage to property.[3]

## III.

### UNDERLYING TRIAL COURT PROCEEDINGS

On March 2, 2023, plaintiff filed its initial complaint in the underlying action. Plaintiff's operative verified first amended complaint, filed October 2, 2023, was styled as a petition for writ of administrative mandamus (against the Board), petition for writ of mandate (against the Board), and complaint for refund of property taxes (against the County of

---

[3] The second phase, which was to determine the amount of assessment relief to be provided to plaintiff, became unnecessary because of the Board's conclusion.

4

Orange (the County)).[4] The parties stipulated to a court trial to be conducted based on briefing and oral argument.

The trial took place on September 25, 2024. Following oral argument, the trial court orally denied plaintiff's request for relief on the merits.[5] On September 30, 2024, pursuant to plaintiff's request, the court issued a written statement of decision.

As to the merits, the trial court ruled: (1) the California Constitution allows reassessment only when property is physically damaged or destroyed; (2) although section 170(a)(1) was intended to and could expand relief for taxpayers to include "indirect physical damage that causes restricted access to property—e.g., physical damage to an off-property bridge or road that restricts access to undamaged property," the Legislature "cannot redefine 'damage' to eliminate all need for physical damage"; and (3) the record "does not allow the court to conclude the interpersonal spread of a virus is the kind of physical damage, direct or indirect, that warrants reassessment."

The court entered judgment on November 5, 2024, and plaintiff appealed.

---

[4] Plaintiff originally filed, but then dismissed, a petition for writ of mandate against the assessor.

[5] The court declined to reach what it referred to as "the myriad procedural and jurisdictional disputes," instead electing to decide the case on the merits.

## DISCUSSION

## I.

### STANDARD OF REVIEW

The fundamental issue in this case is whether a property owner is eligible for reassessment under section 170(a)(1) as a result of mandated closures of (and restricted access to) its property arising from governmental orders issued in response to the pandemic or from the existence of the COVID-19 virus itself. Because that question turns on legal issues of statutory and constitutional interpretation, our review is de novo. (*Slocum v. State Bd. of Equalization* (2005) 134 Cal.App.4th 969, 973–974 (*Slocum*); see *Neecke v. City of Mill Valley* (1995) 39 Cal.App.4th 946, 953 ["The application of a tax statute to essentially undisputed facts confronts the court with a pure question of law. [Citations.] In such a case, the court is not bound by the findings of the trial court and independent review is appropriate"].)

## II.

### ANALYSIS

We begin with the fundamental principles that "[s]tatutes inconsistent with our Constitution are void" and "where possible," courts must "construe statutes in favor of their validity." (*Slocum, supra,* 134 Cal.App.4th at p. 977.) Article XIII, section 15 of the California Constitution empowers the Legislature to authorize local taxing entities "to provide for the assessment or reassessment of taxable property *physically damaged or destroyed* after the lien date to which the assessment or reassessment relates." (*Ibid.*, italics added.) "[P]hysicality has *always* been a constitutional requirement, even when not explicitly stated." (*Slocum,* at p. 978.)

Plaintiff's Calamity Applications were made pursuant to Revenue and Taxation Code section 170, which was adopted by the Legislature *to*

6

*implement* article XIII, section 15 of the California Constitution. (*Slocum, supra,* 134 Cal.App.4th at pp. 972, 977.) Section 170(a)(1) provides as follows:

"Notwithstanding any other law, the board of supervisors, by ordinance, may provide that every assessee of any taxable property, or any person liable for the taxes thereon, whose property was damaged or destroyed without [his or her] fault, may apply for reassessment of that property as provided in this section. . . . [¶] To be eligible for reassessment the damage or destruction to the property shall have been caused by any of the following:

"(1) A major misfortune or calamity, in an area or region subsequently proclaimed by the Governor to be in a state of disaster, if that property was damaged or destroyed by the major misfortune or calamity that caused the Governor to proclaim the area or region to be in a . . . state of disaster. As used in this paragraph, 'damage' includes a diminution in the value of property as a result of restricted access to the property where that restricted access was caused by the major misfortune or calamity." (*Ibid.*)[6]

In *Slocum*, the court analyzed the validity of a property tax regulation adopted by the Board of Equalization—specifically, California Code of Regulations, title 18, section 139 (Rule 139)—that purported to interpret the term "'damage'" in Revenue and Taxation Code section 170 to include "'diminution in the value of the property resulting from a period of restricted physical access to the property.'" (*Slocum, supra*, 134 Cal.App.4th

---

[6] The County adopted a local ordinance authorizing property owners who are subject to property tax assessment and whose property was damaged or destroyed without their fault to "apply for reassessment of that property as provided in Revenue and Taxation Code [s]ection 170." (Orange County Code of Ordinances § 1-4-52, subd. (a).)

7

at p. 973.)[7] The court struck down Rule 139 as unconstitutional, holding "section 170 implements article XIII, section 15 of the California Constitution" and "[t]he plain language of this constitutional provision permits reassessment where taxable property is 'physically damaged or destroyed.'" (*Slocum*, at p. 977.) In other words, *Slocum* held that to pass constitutional muster, Revenue and Taxation Code section 170 requires *physical* damage as a predicate to relief.

In specifically addressing section 170(a)(1), the subdivision at issue here, the *Slocum* court stated: "Airlines also argue that Rule 139 implements and is consistent with section 170, subdivision (a)(1) . . . . [¶] As a general matter, Rule 139 cannot be justified as consistent with section 170, subdivision (a)(1) *because the rule permits reassessment in the absence of physical damage*, whether direct or, in the case of restricted access, indirect." (*Slocum, supra,* 134 Cal.App.4th at p. 981. italics added.) The court explained that section 170(a)(1) provides an exception to the general meaning of "'damage or destruction' as implying direct physical injury to the property, thereby providing limited relief for *indirect* physical damage." (*Slocum* at p. 978, italics added.)

Plaintiff contends it satisfied the two prerequisites of section 170(a)(1) because (1) the pandemic qualifies as "[a] major misfortune or calamity, in an area or region subsequently proclaimed by the Governor to be in a state of disaster" and (2) plaintiff's property was "damaged" when its value diminished due to substantial restricted access arising from that "major misfortune or calamity." (*Ibid*.) Plaintiff contends that, although the

---

[7] Rule 139 was promulgated to grant property tax disaster relief to airlines and airport concessionaires in the wake of the terrorist attacks on September 11, 2001. (*Slocum, supra,* 134 Cal.App.4th at pp. 971–972.)

*Slocum* court "did not explicitly define 'indirect physical damage' . . . the Court suggested that relief under Section 170(a)(1)'s 'restricted access' provision may apply to property when the 'major misfortune or calamity' has manifested physically within the area of the property—or at least within the state—thereby restricting access to the property." (Fn. omitted.)

We disagree. Neither governmental orders restricting access to property due to the COVID-19 virus nor the virus itself equate to *physical harm to property*—either direct or indirect—and plaintiff failed to establish eligibility for reassessment under section 170(a)(1). (See *Another Planet Entertainment, LLC v. Vigilant Ins. Co.* (2024) 15 Cal.5th 1106, 1117 ["physical damage" means distinct, demonstrable, physical alteration to property]; *Wellness Eatery La Jolla v. Hanover Insurance Group* (S.D.Cal. 2021) 517 F.Supp.3d 1096, 1106 ["[T]he virus harms human beings, not property"]; *Kazi v. State Farm Fire & Casualty Co.* (2001) 24 Cal.4th 871, 887 ["[A] loss of 'pure rights in property' is not physical damage or injury to tangible property"].)

Plaintiff contends that "[a]ny requirement limiting Section 170(a)(1) relief to scenarios where a taxpayer can show that some property other than their own has suffered direct physical damage would create an arbitrary and nonsensical requirement with no reasonable basis." Not so. It is not difficult to envision a scenario where a property owner's property diminishes in value because another property that is not owned by the property owner was physically damaged from a qualifying major misfortune or calamity, which in turn resulted in restricted access to the property owner's property, even though the property owner's property was not itself physically harmed by the calamity.

9

Plaintiff's proposed interpretation of section 170(a)(1) would be directly contrary to both the constitutional mandate of physical damage and the directive to construe statutes, where possible, in a manner that renders them valid. (*Slocum, supra*, 134 Cal.App.4th at p. 977.)[8]

III.

REQUESTS FOR JUDICIAL NOTICE

Both parties filed requests for judicial notice (RJN) in connection with this appeal. We deny both requests.

*A. Plaintiff's RJN of Legal Opinion Letters*

Plaintiff filed its RJN on October 8, 2025—after the County had filed its responsive brief—requesting judicial notice of two legal opinion letters pursuant to Evidence Code section 452, subdivision (c), including one from the Board of Equalization's legal staff dated November 16, 1992, and one by the Attorney General's office dated November 17, 1972 (55 Ops.Cal.Atty.Gen. 412 (1972)). Plaintiff seeks judicial notice of these documents to respond to arguments raised in the County's respondent's brief regarding a memorandum issued by the Board of Equalization's chief counsel on May 22, 2020, which was part of the administrative record, concluding Revenue and Taxation Code section 170 does not provide relief for the access restrictions caused by the pandemic.

We deny plaintiff's request. First, we have found no need to go beyond the plain language of section 170(a)(1) to ascertain whether plaintiff

---

[8] In light of our conclusion, and for the same reason the trial court cited, we need not address the County's contentions that the Board lacked jurisdiction to hear plaintiff's appeal and that plaintiff failed to establish the Governor declared a specific area or region to be "'in a state of disaster'" as required under section 170(a)(1). (Italics omitted.)

10

is entitled to relief. The materials therefore are irrelevant to our determination. Second, these materials were not before the trial court or the Board, and we do not find plaintiff's purported reason for not submitting them earlier (i.e., the County never substantively addressed the Board of Equalization memo or the authorities cited therein in the trial court) justifies introducing them now into these proceedings for the first time.

*B. The County's RJN of Legislative Materials Regarding Senate Bill No. 663*

The County's RJN, filed January 22, 2026, seeks judicial notice of various legislative history documents relating to Senate Bill No. 663 (2025–2026 Reg. Sess.), which amended Revenue and Taxation Code section 170 effective October 10, 2025—after judgment was entered in the underlying case. (See Stats. 2025, § 2.) The County contends the legislative history relating to Senate Bill No. 663 demonstrates that, under the prior version of the statute (i.e., the version at issue here), a governor's proclamation of a state of emergency was not enough to invoke the major calamity relief provisions of section 170(a)(1). Plaintiff opposes the County's RJN on several grounds. It contends the request is an attempt to circumvent rule 8.254(b) of the California Rules of Court, which governs the procedure by which a party may inform this court of new authority that was not available in time to be included in the party's appellate briefing,[9] and the legislative history relating to Senate Bill No. 663 is not subject to judicial notice under California Rules of Court, rule 8.252(a)(2)(A) because it is not relevant to the appeal. Plaintiff

---

[9] Rule 8.254 authorizes such notification by letter, which may provide "only a citation to the new authority and identify, by citation to a page or pages in a brief on file, the issue on appeal to which the new authority is relevant." (Cal. Rules of Court, rule 8.254(b).) "No argument or other discussion of the authority is permitted in the letter." (*Ibid.*)

disagrees with the County's argument as to what the legislative history shows, asserting nothing therein suggests that only a governor's formal proclamation of a "state of disaster" (as opposed to a state of emergency) could trigger a taxpayer's ability to qualify for relief under the prior version of section 170(a)(1).

In light of our conclusion that plaintiff was ineligible for reassessment as a matter of law under section 170(a)(1) based on access restrictions due to the pandemic, we need not decide whether a governor's proclamation of a state of emergency was insufficient during the relevant time period to invoke the major calamity relief provisions of section 170(a)(1). The materials for which the County seeks judicial notice are therefore irrelevant, and the request is denied.

## DISPOSITION

The judgment is affirmed. The parties' requests for judicial notice are denied. Respondent County of Orange shall recover costs on appeal.


GOODING, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


DELANEY, J.


12